IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BOY SCOUTS OF AMERICA, CONNECTICUT YANKEE COUNCIL, SPIRIT OF ADVENTURE COUNCIL, ALOHA COUNCIL, CASCADE PACIFIC COUNCIL | § § § § § | Civil Action No. 3:19-cv-1318 |
| | § | |
| Plaintiffs, | § | **MOTION TO REMAND** |
| | § | |
| v. | § | |
| | § | |
| THE HARTFORD ACCIDENT AND INDEMNITY CO., FIRST STATE INSURANCE CO. | § § § | |
| | § | |
| Defendants. | § | |

---

## PLAINTIFFS' MOTION TO REMAND

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................... ii -iii

I.            INTRODUCTION ................................................................................. 1

II.           FACTUAL BACKGROUND.................................................................. 3

      A.     BSA, Connecticut Yankee Council, and the Hartford Insurance Policies. ............. 3

      B.     The Alleged Sexual Abuse Claims Against Connecticut Council and the Claims That Are Presently Pending Against Connecticut Council. ................................... 4

      C.     Hartford's Denial of Its Coverage Obligations For Past Claims and All Future Claims Against Connecticut Council. ................................................................... 6

      D.     BSA, Connecticut Council, and Other Local Councils Commenced an Action in Texas State Court Seeking, Among Other Things, a Declaratory Judgment That Hartford Is Obligated to Provide Insurance Coverage for Pending Claims........... 7

      E.     Connecticut Council's Responses to Hartford's Interrogatories. .......................... 8

III.          ARGUMENT AND AUTHORITIES.................................................... 9

      A.     Hartford Cannot Satisfy Its Heavy Burden for Removal. ....................................... 9

      B.     Connecticut Council Has Ripe Declaratory Judgment Claims Against Hartford in the Texas Action and Therefore Is a Proper Plaintiff. ......................................... 10

      C.     Hartford Must Pay the Reasonable Attorney's Fees and Costs Incurred in Filing this Motion to Remand.......................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. States Ins. Co. v. Bailey*,
  133 F.3d 363 (5th Cir. 1998) ................................................................................12

*Cobb v. Delta Exports, Inc.*,
  186 F.3d 675 (5th Cir. 1999) ................................................................................10

*Flagg v. Stryker Corp.*,
  819 F.3d 132 (5th Cir. 2016) ................................................................................10

*Grupo Dataflux v. Atlas Glob. Grp., L.P.*,
  541 U.S. 567 (2004)................................................................................................9

*Howery v. Allstate Ins. Co.*,
  243 F.3d 912 (5th Cir. 2001) ..................................................................................9

*J.P. Morgan Chase Bank, N.A. v. Del Mar Properties, L.P.*,
  443 S.W.3d 455 (Tex. App. 2014)..........................................................................9

*John Doe 1, et al. v. Boy Scouts of America Corporation, et al.*,
  Cause No. FSTCV185019749 .................................................................................5

*Miller v. Giesecke & Devrient Am., Inc.*,
  No. 3:06-CV-1466-D, 2007 WL 518557 (N.D. Tex. Feb. 20, 2007) ..............10, 11, 12, 13, 14

*Molina v. Wal-Mart Stores Texas, L.P.*,
  535 F. Supp. 2d 805 (W.D. Tex. 2008)................................................................9, 10

*NL Indus., Inc. v. OneBeacon Am. Ins. Co.*,
  435 F. Supp. 2d 558 (N.D. Tex. 2006) ...................................................................9

*Smallwood v. Ill. Cent. R.R. Co.*,
  385 F.3d 568 (5th Cir. 2004) ...........................................................................10, 11

*Super. Air Parts, Inc. v. Kubler*,
  No. 3:14-CV-3492-D, 2015 WL 567223 (N.D. Tex. Feb. 11, 2015) ....................10

*Travis v. Irby*,
  326 F.3d 644 (5th Cir. 2003) ....................................................................2, 10, 11

*Vinings Ins. Co. v. Byrdson Servs., LLC*,
  No. 1:14-CV-525, 2016 WL 3567057 (E.D. Tex. June 13, 2016)..............12, 13, 14

**Statutes and Codes**

28 U.S.C. § 1447 ........................................................................................................................15

28 U.S.C. § 1447(c) ...................................................................................................................15

Texas Insurance Code section 542 ..............................................................................................7

Boy Scouts of America ("BSA"), Spirit of Adventure Council ("Spirit Council"), Cascade Pacific Council ("Cascade Council"), Aloha Council and Connecticut Yankee Council ("Connecticut Council") (collectively, "Plaintiffs"), requests that this Honorable Court remand the above-styled cause to the District Court for the 95th Judicial District in Dallas, Texas (hereinafter, the "Texas State Court") and award attorney's fees and costs.

## I.     INTRODUCTION

Plaintiffs seek to remand this case to Texas state court as the purportedly fraudulently joined plaintiff—Connecticut Council—has justiciable declaratory judgment claims against Hartford Accident and Indemnity Company ("Hartford A&I") and First State Insurance Company ("First State") (collectively, "Hartford").  Connecticut Council is a named insured under the Hartford insurance policies, entitling it to the proceeds from those policies. Connecticut Council has pending, alleged sexual abuse claims that are covered by the Hartford insurance policies and has, therefore, sought coverage from Hartford.  Hartford has denied its coverage obligations and, as a result, a ripe dispute exists.  Accordingly, the Connecticut Council is a proper plaintiff and destroys complete diversity as both the Connecticut Council and Hartford are residents of Connecticut.  As such, remand is appropriate.

Connecticut Council is one of several councils across the nation that implement the programs of Boy Scouts of America ("BSA").  Over the last several years, BSA and Connecticut Council have been named in numerous actions, where the plaintiffs allege claims against BSA and Connecticut Council based on purported sexual abuse.  Notably, Connecticut Council presently has several claims pending against it, where defense counsel has been retained to defend Connecticut Council.

Connecticut Council obtained insurance to compensate it for both the defense costs incurred and from any liability that may accrue as a result of the alleged sexual-abuse claims.

1

Specifically, Connecticut Council is an insured under the general-liability insurance policies purchased by Boy Scouts of America and, therefore, has rights to directly access these insurance policies to cover the sexual-abuse claims.  Relevant here, several of the sexual-abuse claims filed against BSA and Connecticut Council trigger the insurance coverage of policies issued by Hartford.  Hartford issued primary, umbrella and excess general-liability policies from 1971 to 1976, and several of the pending claims allege sexual abuse during these policy periods.

BSA and Connecticut Council timely provided notice to Hartford and sought insurance coverage for the pending alleged sexual-abuse claims, but Hartford has denied its obligations. As a result, BSA, Connecticut Council, and certain other councils sued Hartford in Texas state court seeking, among other things, declaratory relief.  More specifically, Connecticut Council seeks declaratory judgments that, with respect to the claims currently pending: (1) Hartford owes the accruing defense costs of Connecticut Council; and (2) Hartford owes indemnity amounts it may incur as a result of the pending claims.  Because Connecticut Council and Hartford are both residents of Connecticut, Texas state court is the appropriate jurisdiction for this action as complete diversity does not exist between the parties.

Notwithstanding the lack of complete diversity, Hartford has sought to remove this action almost a year after suit was filed, contending that Connecticut Council is a "misjoined" plaintiff, *i.e.* fraudulently joined plaintiff.  Hartford, however, cannot meet its heavy burden to establish fraudulent joinder.

To establish fraudulent joinder, Hartford must establish that: (1) the plaintiff committed actual fraud in pleading the jurisdictional facts; or (2) the plaintiff is unable to establish a claim against the non-diverse defendant in the state court action.  *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003).  Hartford does not (and cannot) contend that BSA or Connecticut Council committed

actual fraud.  Moreover, Hartford fails to establish that Connecticut Council does not have a claim against it and, indeed, cannot do so because Connecticut Council has several sexual abuse claims against it that are currently pending.  As a result, Connecticut Council has a claim for the defense costs that continue to accrue on a monthly-basis that are otherwise due and owing from Hartford.  Furthermore, Connecticut Council has ripe claims against Hartford given its refusal to pay for any indemnity obligations that may arise.

Accordingly, Connecticut Council has justiciable declaratory judgment claims against Hartford and, for purposes of testing diversity jurisdiction, Connecticut Council must be considered, thereby destroying complete diversity.  Due to the lack of complete diversity, Hartford improperly removed this action and remand is the appropriate remedy.  Plaintiffs therefore request that the Court remand this action to the Texas State Court.

## II.     FACTUAL BACKGROUND

### A.     BSA, Connecticut Yankee Council, and the Hartford Insurance Policies.

The Boy Scouts of America ("BSA") is one of the nation's largest and most prominent values-based youth development organizations, with more than 2.4 million youth participants and nearly one million adult volunteers.  Ex. 1 (App. 003) (McDermott Aff., ¶ 4).  BSA was founded in 1910, and since then, more than 110 million Americans have been participants in BSA programs at some time.  *Id.* at App. 003 (McDermott Aff., ¶ 4).

The BSA programs are delivered through local chartering organizations, such as churches, clubs, civic associations, or educational organizations, to implement the scouting program for youth within their communities.  *Id.* at App. 003 (McDermott Aff., ¶ 5).  Units are led entirely by volunteers appointed by the chartering organization, who are supported by local councils like Connecticut Council. *Id.* at App. 003 (McDermott Aff., ¶ 5).

To insure its many activities and local councils throughout the country, BSA maintains a comprehensive, broad insurance program.  Ex. 2 at App. 007 (Dama Aff., ¶ 4).  From approximately 1962 to the present, BSA purchased several general liability, umbrella and/or excess liability insurance policies, and from 1971 to 1978, Hartford issued primary, umbrella and excess general liability insurance policies to BSA (the "Hartford Policies").  *Id.* at App. 007 (Dama Aff., ¶ 4).

Connecticut Council,[1] among others, is a named insured under the Hartford Policies.  Ex. 4-A (App. 203, 370, 438) (Hartford Primary Policy); Ex. 4-B (App. 511) (Hartford Excess Policy); *see also* Ex. 3 (App. 010) (Flowers Aff., ¶¶ 4, 6).  As such, the Hartford Policies obligate Hartford to provide the Connecticut Council coverage for a broad array of claims, including alleged sexual-abuse claims.  Specifically, the Hartford Policies provide that they will pay "all sums that [Connecticut Council] is obligated to pay as damages because of personal injury [which includes bodily injury] to which the insurance applies, caused by an occurrence."  Ex. 4-A (App. 495); Ex. 4-B (App. 524).

**B.      The Alleged Sexual Abuse Claims Against Connecticut Council and the Claims That Are Presently Pending Against Connecticut Council.**

Over the past several years, BSA and its local councils, including Connecticut Council, have been subject to numerous claims and lawsuits in which the underlying plaintiffs allege that they were sexually abused while a participant in various BSA programs (the "Underlying Lawsuits").  Ex. 1 (App. 003) (McDermott Aff., ¶ 6); Ex. 3 (App. 010) (Flowers Aff., ¶ 7).  The Underlying Lawsuits allege abuse during various and multiple periods of time, in various and multiple geographic locations, and based on the conduct of various alleged perpetrators.  Ex. 1

---

[1] Connecticut Council was formed in 1998 through the merger of the Quinnipiac Council and Fairfield County Council, both of which are named insureds under the Hartford Policies.  Ex. 3 (App. 010) (Flowers Aff., ¶ 4). Connecticut Council is headquartered and incorporated in Connecticut. *Id.* at App. 010 (Flowers Aff., ¶ 5)

(App. 004) (McDermott Aff., ¶ 7).  The Underlying Lawsuits generally allege that BSA and its local councils, including the Connecticut Council, were negligent in failing to prevent the sexual abuse.  *Id.* at App. 003 (McDermott Aff., ¶ 8).

Several of the Underlying Lawsuits implicate coverage for years that Hartford issued insurance coverage.  Although several of the lawsuits triggering the Hartford coverage have been resolved, there are still several pending claims where Hartford has continuing insurance obligations to Connecticut Council.  Ex. 3 (App. 010) (Flowers Aff., ¶ 8).  Specifically, in a case styled *John Doe 1, et al. v. Boy Scouts of America Corporation, et al.* (the "John Doe Lawsuit"), Cause No. FSTCV185019749, filed in the Superior Court of the State of Connecticut, four plaintiffs (the "John Doe Defendants") assert that they were physically, mentally, and sexually abused by a Connecticut Council scout leader between 1974 and 1976.  Ex. 3-A (App. 013–165) (John Doe Compl.).  The John Doe Defendants assert claims against and name as a defendant Connecticut Council.[2]  *Id.* at App. 016 (John Doe Compl., ¶¶ 5–6).

Because the John Doe Defendants allege their bodily injuries, *i.e.* the sexual abuse, occurred between 1974 and 1976, the 1974 through 1976 Hartford primary and excess policies are triggered and must respond to both defend and indemnify Connecticut Council against these claims.  Ex. 4-A (App. 171) (Hartford Primary Policy); Ex. 4-B (App. 500) (Hartford Excess Policy).  Despite being provided with notice, as discussed immediately below, Hartford has denied its obligations to either defend and/or indemnify Connecticut Council against the John Doe Lawsuit.  The John Doe Lawsuit is currently pending and, as such, Connecticut Council

---

2 Hartford was well aware of the pendency of the John Doe Lawsuits as BSA produced a spreadsheet to Hartford identifying these pending claims against the Connecticut Council on January 31, 2019.  Ex. 4 (App. 168–169) (Green Aff. ¶¶ 8–10).  Thus, in filing its notice of removal, Hartford knew, or should have known that the Connecticut Council has obligations accruing monthly due to its defense of the pending John Doe Lawsuit, but nonetheless filed its notice of removal.  The Plaintiffs requested that Hartford withdraw its notice of removal based on the pending John Doe Lawsuit, but Hartford refused to do so.

continues to incur defense costs.  Ex. 1 (App. 004) (McDermott Aff., ¶ 11); Ex. 3 (App. 010)

(Flowers Aff., ¶ 11).

**C.**     **Hartford's Denial of Its Coverage Obligations For Past Claims and All Future Claims Against Connecticut Council.**

BSA and Connecticut Council timely provided Hartford with notice of each of the

Underlying Lawsuits that implicated the Hartford Policies, including the John Doe Lawsuit.  Ex.

2 (App. 007) (Dama Aff., ¶ 6).  Hartford has nevertheless refused and continues to refuse to

satisfy its coverage obligations, including denying coverage for both defense costs and indemnity

payments associated with both the resolved and pending Underlying Lawsuits. *Id.* at App. 007

(Dama Aff., ¶ 7).

Hartford has asserted several coverage positions to deny that it owes BSA and the

Connecticut Council any obligation to pay defense and indemnity payments for the Underlying

Lawsuits, which includes the John Doe Lawsuit.  Ex. 4-D (App. 577–578) (Hartford's Mot. to

Intervene).  Most significantly, Hartford has taken the position that all the claims for sexual

abuse alleged in the multitude of Underlying Lawsuits are the result of a single occurrence.  Ex.

4-C at (App. 550) (Hartford's Resp. to Interrog).  Specifically, Hartford asserts that the injuries

alleged in the Underlying Lawsuits were caused by BSA's failure to warn parents and guardians

that Scouts might be abused.  Ex. 4-D (App. 578) (Hartford's Motion to Intervene).

Based on this one "occurrence" theory, Hartford contends that once a policy's per-

occurrence limits are exhausted by any claim, it has no further responsibility under those policies

for claims relating to sexual abuse.  *Id.* at App. 578 (Hartford's Motion to Intervene).  Hartford

has taken this position despite the fact that it is contrary to its policy language, well-settled law,

and the practice of any of BSA's and Connecticut Council's other insurers.

This directly impacts insurance coverage for the claims currently pending against Connecticut Council, *i.e.*, the John Doe Lawsuit. Specifically, Connecticut Council is presently defending the John Doe Lawsuit, which has not been resolved. Ex. 3 (App. 010) (Flowers Aff., ¶ 11). Thus, Connecticut Council has continuing defense costs that are being incurred that are otherwise due and owing from Hartford. *Id.* at (App. 010) (Flowers Aff., ¶ 10). Additionally, given that the John Doe Lawsuit is not resolved, to the extent a settlement is entered or a judgment is issued, the Hartford Policies would be obligated to pay any amount attributable to Connecticut Council. *Id.* at (App. 010) (Flowers Aff., ¶ 12).

**D.    BSA, Connecticut Council, and Other Local Councils Commenced an Action in Texas State Court Seeking, Among Other Things, a Declaratory Judgment That Hartford Is Obligated to Provide Insurance Coverage for Pending Claims.**

On June 5, 2018, BSA and Connecticut Council, amongst others, filed suit in the District Court of Dallas County against Hartford based on its improper denial of coverage (the "Texas Action"). [Doc. No. 1-2] (Pl.'s Orig. Pet.). BSA and Connecticut Council asserted several claims in the Texas Action, including, but not limited to declaratory judgment, breach of contract, extracontractual relief under section 542 of the Texas Insurance Code, and notice of intent to assert extracontractual relief under section 541. *Id.* (Pl.'s Orig. Pet.).

With respect to the declaratory judgment count, Connecticut Council seeks a declaration that: (1) each Underlying Lawsuit, including the John Doe Lawsuit, constitutes an "occurrence" under the Hartford Policies; (2) each of the Hartford Policies are in full force and effect; (3) Connecticut Council's renewal of certain Hartford Policies entitles it to separate per-occurrence limits of liability for each year covered by the Policies; (4) the Hartford Policies do not contain an aggregate limit that can be exhausted due to the payment of loss arising from personal injury claims; and (5) Hartford is obligated to pay and/or reimburse Connecticut Council for any ongoing defense costs incurred on the pending Underlying Lawsuits, including

the John Doe Lawsuit.  *Id.* (Pl.'s Orig. Pet.).

**E.**    **Connecticut Council's Responses to Hartford's Interrogatories.**

On May 8, 2019, Connecticut Council filed its responses to Hartford's Second Set of Interrogatories. [Doc. No. 1–3] (Pl.'s Resp. to Hartford Second Set of Interrogs.).  Hartford's Interrogatory No. 1 and No. 2 state as follows, respectively: (1) "For each Connecticut Council Claim, state the amount of Defense Costs that Connecticut Council has paid or has reimbursed BSA;" and (2) "For each Connecticut Council Claim, state the amount of Indemnity Costs that Connecticut Council has paid or has reimbursed BSA."  *See id.* at Nos. 1 and 2 [Doc. No. 1–3]. In response to each interrogatory, Connecticut Council states, in part:

> At this time, Connecticut is not aware of BSA seeking payment or reimbursement from Connecticut for defense costs. However, Connecticut's investigation is ongoing. Therefore, subject to and without waiving any of the foregoing objections, Connecticut reserves the right to supplement this Interrogatory in the event that Connecticut locates relevant, responsive, and nonprivileged information sought by this Interrogatory.

*See id.* Nos. 1 and 2 [Doc. No. 1–3].  In its Notice of Removal, Hartford argues that Connecticut Council has no claim against Hartford because BSA has not sought reimbursement for the defense costs that BSA paid on behalf of Connecticut Council.  *See* Hartford Notice of Removal ¶¶ 10–13 [Doc. No. 1].  Therefore, Hartford incorrectly asserts that Connecticut Council was "misjoined" and, thereby, should not be considered for diversity.  *See id.* at ¶ 15 [Doc. No. 1].

However, while Hartford acknowledges that "the litigation is limited to the parties' respective rights and obligations with respect to the 201 Underlying Lawsuits," Hartford ignores the fact that the "Underlying Lawsuits" include the 4 claims that are the subject of the John Doe Lawsuit which is **currently pending**.  *See id.* at ¶ 15 [Doc. No. 1–3]; Ex. 4 (App. 168-169) (Green Aff. ¶ 10).  As such, Connecticut Council continues to incur defense costs on a moving forward-monthly basis with regard to the "Underlying Lawsuits," *i.e.* the John Doe Lawsuit.  Ex.

3 (App. 010) (Flowers Aff., ¶ 11).  As such, the party that paid past defense costs and indemnity payments, be that BSA or Connecticut Council, on account of the Underlying Lawsuits is wholly irrelevant.  Hartford is obligated under its policies to pay those amounts moving forward – not Connecticut Council or BSA.

### III.    ARGUMENT AND AUTHORITIES

#### A.    Hartford Cannot Satisfy Its Heavy Burden for Removal.

A federal court's jurisdiction is limited.  *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).  A party may remove a state action to federal court if the federal court has subject matter jurisdiction over the action.  *Molina v. Wal-Mart Stores Texas, L.P.*, 535 F. Supp. 2d 805, 806 (W.D. Tex. 2008) (citing 28 U.S.C. § 1441(a)).  The removing party bears the burden of establishing the federal court's subject matter jurisdiction.  *Howery*, 243 F.3d 912 at 916.

A removing party can establish subject matter jurisdiction by evidencing the following two requirements for diversity jurisdiction: (1) complete diversity of citizenship among the parties, and (2) an amount in controversy that exceeds $75,000.00.  *Molina*, 535 F. Supp. 2d at 806 (citing 28 U.S.C. § 1332).  With respect to complete diversity, each plaintiff must have a different citizenship from each defendant.  *NL Indus., Inc. v. OneBeacon Am. Ins. Co.*, 435 F. Supp. 2d 558, 561 (N.D. Tex. 2006).  Therefore, the removing party bears the burden to "distinctly and affirmatively allege" the citizenship of the parties.  *Howery*, 243 F.3d 912 at 919.

A challenge to federal subject matter jurisdiction may be raised at any time prior to final judgment.  *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 571 (2004).  If it is shown that the federal court lacks subject matter jurisdiction, remand is the proper remedy.  *J.P. Morgan Chase Bank, N.A. v. Del Mar Properties, L.P.*, 443 S.W.3d 455, 461 (Tex. App. 2014).

Critically, "[a]ny doubts as to the propriety of removal should be resolved in favor of remand." *Molina*, 535 F. Supp. 2d at 806.

Here, Hartford cannot satisfy its burden to establish complete diversity. Hartford—domiciled in Connecticut—incorrectly argues that complete diversity exists between the parties because Connecticut Council—also domiciled in Connecticut—is a "misjoined" plaintiff. Ex. 3 (App. 010) (Flowers Aff., ¶ 5). As noted below, Connecticut Council is a proper plaintiff as it has justiciable declaratory judgment claims against Hartford based on the pending John Doe Lawsuit, where Connecticut Council incurs obligations monthly that are otherwise due and owing from Hartford.

## B.    **Connecticut Council Has Ripe Declaratory Judgment Claims Against Hartford in the Texas Action and Therefore Is a Proper Plaintiff**.

The "fraudulent joinder" doctrine entitles a party to remove a case to federal court based on diversity jurisdiction where a non-diverse defendant or plaintiff has been improperly joined.[3] *Cobb v. Delta Exports, Inc.*, 186 F.3d 675, 677 (5th Cir. 1999); *see also Miller v. Giesecke & Devrient Am., Inc.*, No. 3:06-CV-1466-D, 2007 WL 518557, at *2 (N.D. Tex. Feb. 20, 2007) (noting that the doctrine can be applied to both fraudulently joined defendants and plaintiffs). The removing party bears the "heavy burden" of proving that the non-diverse plaintiff was improperly joined. *Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568, 574 (5th Cir. 2004).

Fraudulent joinder can be established upon the showing of two scenarios at the time of removal: (1) the plaintiff committed actual fraud in pleading the jurisdictional facts; or (2) the plaintiff is unable to establish a claim against the non-diverse defendant in the state court action.

---

3 Hartford agrees that the fraudulent joinder standard outlined here applies to this analysis. Indeed, in its Notice of Removal, Hartford cites to case law utilizing the fraudulent joinder framework. *See Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (adopting  the phrasing of the required proof for establishing fraudulent joinder from *Travis v. Irby* and rejecting all others, "whether the others appear to describe the same standard or not"); *Flagg v. Stryker Corp.*, 819 F.3d 132, 136 (5th Cir. 2016) (relying upon the standard outlined in both *Travis* and *Smallwood* to determine improper joinder); *Super. Air Parts, Inc. v. Kubler*, No. 3:14-CV-3492-D, 2015 WL 567223, at *5–6 (N.D. Tex. Feb. 11, 2015) (applying the fraudulent joinder standard in both *Travis* and *Smallwood*).

*Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003).   Hartford does not contend that BSA or Connecticut Council committed actual fraud and, therefore Hartford must establish that Connecticut Council has no potential claim against Hartford.

The removing party must prove that "there is *absolutely no possibility* that the plaintiff will be able to establish a cause of action against the non-diverse defendant in state court." *Id.* If a court finds any reasonable basis for predicting that the plaintiff may establish a claim against the non-diverse defendant, the court will find no fraudulent joinder. *Id.* In determining whether the plaintiff has a reasonable possibility of recovery in the state court action, the court may conduct a "Rule 12(b)(6)-type analysis," looking initially to the allegations of the complaint to determine whether the plaintiff states a claim against the defendant under state law. *Smallwood*, 385 F.3d 568 at 573.   Moreover, "all disputed questions of fact and all ambiguities in state law must be resolved in favor of the plaintiff." *Id.*

Given that the Connecticut Council seeks a declaration regarding its rights and Hartford's obligations under the Hartford policies for, among other things, the currently pending John Doe Lawsuit, Connecticut Council has viable declaratory judgment claims against Hartford.  As such, Hartford has failed to establish that there is "*absolutely no possibility*" that Connecticut Council can assert a cause of action against it.

1.   Declaratory Judgment Claims Constitute Viable Claims for Analyzing Diversity
     Jurisdiction.

Plaintiffs seeking declaratory judgments may have a reasonable possibility of recovery for purposes of determining fraudulent joinder.  *Miller*, 2007 WL 518557, at *4.  A plaintiff is not required to have a viable cause of action against the non-diverse defendant separate from the declaratory judgment action.  *Id.*  It is only necessary "that there be a justiciable controversy as to the rights and status of the parties—a real and substantial controversy involving genuine

conflict of tangible interests and not merely a theoretical dispute—and the controversy will be resolved by the declaration sought." *Id.* Here, because the John Doe Lawsuit is currently pending, there is a real and substantial controversy involving a genuine conflict of tangible interests, *i.e.*, Connecticut Council's defense expenses incurred to defend against the John Doe Lawsuit as well as any indemnity payments it may incur should the John Doe Lawsuit settle or proceed to judgment – and such controversy can and will be resolved by the declaration sought by Connecticut Council in the Texas Action.  Ex. 3 (App. 010) (Flowers Aff., ¶¶ 10–12).

Furthermore, ample Texas case law supports the existence of a justiciable controversy for purposes of diversity jurisdiction where an insurer or insured seeks a declaratory judgment construing the rights and obligations of either party under an insurance policy, even while the underlying state action is ongoing. *Vinings Ins. Co. v. Byrdson Servs., LLC*, No. 1:14-CV-525, 2016 WL 3567057, at *5 (E.D. Tex. June 13, 2016) (finding the existence of an actual case or controversy where an insurer brought a declaratory judgment action regarding its duty to defend or indemnify the insured for an underlying state action while the action was still pending); *Am. States Ins. Co. v. Bailey*, 133 F.3d 363, 368–69 (5th Cir. 1998) (finding "[a]n actual controversy may exist when an insurance carrier seeks a declaratory judgment that it has a duty neither to defend nor indemnify its insured in a state court action that has not yet proceeded to judgment."); 3 Moore's Manual--Federal Practice and Procedure § 25A.22 (2019) ( noting that, "[i]n an action seeking a declaratory judgment regarding whether coverage exists or an insurer is liable under an insurance policy, an actual controversy exists when a significant dispute exists between parties having adverse legal interests […] the existence of a legal dispute is established when the parties disagree as to the terms, rights, or obligations of the insurance policy").

2. <u>Connecticut Council is a Properly Joined Plaintiff with Viable Declaratory Judgment Claims Against Hartford for Purposes of Testing Diversity Jurisdiction</u>.

Connecticut Council is a properly joined plaintiff in the Texas Action because it has viable declaratory judgment claims against Hartford resulting from the pending claims against it in the Underlying Lawsuits, *i.e.*, the John Doe Lawsuit.

Connecticut Council has asserted a justiciable declaratory judgment action against Hartford in the Texas Action that is neither contingent nor hypothetical.  *See Miller*, 2007 WL 518557, at *4.  As previously noted, Texas courts find that, for purposes of determining diversity jurisdiction, a justiciable controversy exists where a declaratory judgment is sought that construes the terms, rights, and obligations of the parties to an insurance policy, even while the underlying state action is pending.  *See Vinings*, 2016 WL 3567057, at *5.  Here, four claims (the John Doe Lawsuit) are currently pending against Connecticut Council alleging sexual-abuse claims that trigger the Hartford Policies.  Ex. 3 (App. 010) (Flowers Aff., ¶¶ 10–11).  As a result, Connecticut Council is incurring and will continue to incur on-going defense costs.  *Id.* (App. 010) (Flowers Aff., ¶ 10).  These amounts are otherwise due and owing from Hartford but for its improper denial of coverage based on its "single occurrence" theory of exhaustion.

Based on Hartford's continuing refusal to pay Connecticut Council's on-going defense costs and refusal to pay indemnity amounts that may result from a judgment or settlement, Connecticut Council seeks declarations regarding the interpretation of the Hartford Policies, including those relating to:  (1) the number of per-occurrence limits that result from the sexual-abuse claims; and (2) Hartford's obligations to pay on-going defense costs.  [Doc. No. 1-2] (Pl.'s Orig. Pet.).  Because the declaratory judgment action seeks to construe terms and provisions of the Hartford Policies, the action presents a justiciable controversy.

Hartford nevertheless asserts in its Notice of Removal that Connecticut Council is a

"misjoined" plaintiff because it has no stake in the Underlying Lawsuits since it has not paid any amounts to defend or resolve the Underlying Lawsuits. *See* Hartford Notice of Removal ¶¶ 10–15 [Doc. No. 1]. As such, Hartford contends that Connecticut Council has no claim against Hartford in the state action and Connecticut Council should be disregarded for diversity purposes. *See id.* Hartford is mistaken.

Hartford disregards pertinent facts that demonstrate Connecticut Council has justiciable claims against Hartford. First, Hartford does not dispute that Connecticut Council is a named insured under the Hartford policies. Indeed, Hartford cannot. Ex. 4-A (App. 203, 370, 438) (Hartford Primary Policy); Ex. 4-B (App. 511) (Hartford Excess Policy); *see also* Ex. 3 (App. 010) (Flowers Aff., ¶¶ 4–5). As a named insured under the Hartford policies, Connecticut Council is entitled to coverage from Hartford for the defense costs and indemnity payments incurred due to the Underlying Lawsuits. As such, Connecticut Council has every right to seek a declaration regarding its rights and Hartford's obligations under the Hartford policies.

Second, Hartford completely disregards the ***pending*** John Doe Lawsuit against Connecticut Council where Connecticut Council is accruing continuing defense obligations and may accrue indemnity amounts. Ex. 1 (App. 004) (McDermott Aff. ¶ 11); Ex. 3 (010) (Flowers Aff. ¶ 11). Pursuant to Texas law, this establishes a justiciable declaratory judgment claim between Connecticut Council and Hartford for purposes of testing diversity jurisdiction because these claims are neither contingent nor hypothetical. *Miller*, 2007 WL 518557, at *4. Accordingly, diversity jurisdiction exists as both Connecticut Council and Hartford are Connecticut residents and, as such, remand is appropriate because complete diversity does not exist. Ex. 3 (App. 010) (Flowers Aff. ¶ 5).

Third, Hartford's reliance on the Connecticut Council's discovery responses are

irrelevant.  *See* Hartford Notice of Removal ¶¶ 10–13, [Doc. No. 1].  The fact that Connecticut Council's interrogatory responses state that BSA has paid amounts otherwise due and owing by Connecticut Council, and that BSA has not sought reimbursement for defense and indemnity costs that it paid on behalf of Connecticut Council, is of absolutely no consequence.  Given the pending claims against the Connecticut Council and the on-going obligations that are otherwise due by Hartford to the Connecticut Council, the previously paid amounts are irrelevant.  Ex. 1 (App. 004) (McDermott Aff. ¶ 11); Ex. 3 (010) (Flowers Aff. ¶ 11).

In summary, Hartford has failed to establish that Connecticut Council has no reasonable basis for establishing a claim against Hartford in the Texas Action.  Connecticut Council is therefore a properly joined plaintiff and should be considered for purposes of determining diversity jurisdiction.  Because Connecticut Council and Hartford are both domiciled in Connecticut, complete diversity does not exist and this matter should be remanded to the Texas State Court.

**C.      Hartford Must Pay the Reasonable Attorney's Fees and Costs Incurred in Filing this Motion to Remand.**

Pursuant to 28 U.S.C. § 1447, this Court is expressly authorized to award Plaintiffs' reasonable attorney's fees and costs incurred in filing this motion.  *See* 28 U.S.C. § 1447(c) (stating that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal.").  Hartford erroneously filed its Notice of Removal with full knowledge that Connecticut Council is a properly joined plaintiff domiciled in Connecticut and, therefore, that complete diversity does not exist.  Indeed, as noted above, Plaintiffs produced to Hartford a spreadsheet identifying the pending claims against Connecticut Council and Hartford is well aware that the Connecticut Council is a named insured under its policies and, therefore, is entitled to the payment of defense costs and any

indemnity amounts.  Ex. 4 (App. 168–169) (Green Aff. ¶¶ 8–10).  Indeed, Plaintiffs conferred with Hartford regarding this issue, noting the pending claims against the Connecticut Council, and requested that Hartford withdraw the notice of removal—Hartford refused to do so. *Id.* at (App. 169) (Green Aff. ¶ 12).

Therefore, in addition to remanding this action to the Texas State Court, this Court should also award Connecticut Council's reasonable attorney's fees and costs.

## V.  CONCLUSION

Hartford has failed to prove that there is absolutely no possibility that Connecticut Council will be able to establish a claim against it in the Texas Action.  Therefore, Connecticut Council is a properly joined plaintiff that destroys complete diversity.

As such, Plaintiffs respectfully request that this matter be remanded to the Texas State Court and that this Court grant Plaintiffs their costs and expenses, including reasonable attorney's fees, incurred as a result of the removal, and such other and further relief to which Plaintiffs may be properly entitled.

Dated: June 21, 2019

                                                  Respectfully submitted,

                                                  /s/ *Ernest Martin, Jr.*

Ernest Martin, Jr.
State Bar No. 13063300
ernest.martin@haynesboone.com
Carla Green
State Bar No. 24097762
carla.green@haynesboone.com
HAYNES AND BOONE, L.L.P.
2323 Victory Ave., Suite 700
Dallas, Texas 75219
Telephone:    (214) 651-5000
Telecopier:    (214) 651-5940

ATTORNEYS FOR PLAINTIFFS BOY SCOUTS OF AMERICA

## <u>CERTIFICATE OF CONFERENCE</u>

I do hereby certify that a conference was held between myself and Defendants' attorney, Joshua Weinberg, on June 10, 2019, regarding the merits of this motion and that no agreements could be reached regarding the same and that Defendants are opposed to remand.

/s/ *Ernest Martin, Jr.*
Ernest Martin, Jr.

### CERTIFICATE OF SERVICE

  The undersigned attorney hereby certifies that a true and correct copy of the foregoing document was electronically served on all counsel of record, on the 21st day of June, 2019, in accordance with the Federal Rules of Civil Procedure.

Todd M. Tippett
ttippett@zelle.com
Zelle LLP
901 Main Street, Suite 4000
Dallas, Texas 75202-3975
Telephone:  214-742-3000
Facsimile:  214-760-8994

James P. Ruggeri
jruggeri@goodwin.com
Joshua D. Weinberg
jweinberg@goodwin.com
Abigail W. Williams
awilliams@goodwin.com
Shipman & Goodwin LLP
1875 K Street NW, Suite 600
Washington, District of Columbia 20006-1251
Telephone: 202-469-7752
Facsimile:  202-469-7751

/s/ *Ernest Martin, Jr.*
Ernest Martin, Jr.