UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BOY SCOUTS OF AMERICA, | § | Case No. 3:19-CV-1318-B |
| CONNECTICUT YANKEE COUNCIL, | § | |
| SPIRIT OF ADVENTURE COUNCIL, | § | |
| ALOHA COUNCIL, CASCADE PACIFIC | § | |
| COUNCIL | § | |
| | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| | § | |
| THE HARTFORD ACCIDENT | § | |
| AND INDEMNITY CO., FIRST | § | |
| STATE INSURANCE CO. | § | |
| | § | |
|     Defendants. | § | |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................................................1

FACTUAL BACKGROUND .....................................................................................................3

    A.    Hartford Defends BSA in the Underlying Claims ....................................................3

    B.    This Action Arises Out Of A Dispute Between Hartford and BSA -- Not the Local Councils -- Regarding The Terms and Conditions Of The Hartford Policies .........4

    C.    Hartford's Discovery Demonstrates That Connecticut Council Has No Legal Interest and is Misjoined, Warranting Removal ......................................................5

ARGUMENT .............................................................................................................................7

    A.    The Court Must Disregard the Citizenship of Connecticut Council Because it is Misjoined as a Plaintiff .............................................................................................7

    B.    Connecticut Council's Claim is Speculative and Hypothetical, and Therefore Cannot Stand as  Basis to Destroy Diversity ..........................................................9

        1.    The Issues That Would Have To Be Resolved Are Not Fit For Judicial Resolution ..................................................................................................11

        2.    Connecticut Council Cannot Establish Any "Hardship" Whatsoever .......12

    C.    BSA's Authorities Are Not on Point and Do Not Authorize Remand Here..........14

CONCLUSION .......................................................................................................................17

# TABLE OF AUTHORITIES

**Texas State Cases**

*Stonewall Insurance Co. v. Modern Exploration, Inc.*
    757 S.W.2d 432 (Tex. App. -- Dallas 1988)................................................................11 n.7

*Texas Department of Public Safety v. Moore*
    985 S.W.2d 149 (Tex. App. -- Austin 1998 no pet.)....................................................10 n.6

**Federal Cases**

*American States Insurance Co. v. Bailey*
    133 F.3d 363 (5th Cir. 1998) ...........................................................................................15

*Badon v. RJR Nabisco Inc.*
    224 F.3d 382, 389 n.10. (5th Cir. 2000) ...........................................................................9

*Badon v. RJR Nabisco Inc.*
    236 F.3d 282 (5th Cir. 2000) ...........................................................................................14

*Bell v. Bank of America Home Loan Servicing LLP*
    No. 4:11-cv-02085, 2012 WL 568755 (S.D. Tex. Feb. 21, 2012)....................................10

*Camacho v. Tex. Workforce Commission*
    445 F.3d 407 (5th Cir. 2006) ...................................................................................10 n.6

*Flagg v. Stryker Corp.*
    819 F.3d 132 (5th Cir. 2016) .............................................................................................8

*Heritage Bank v. Redcom Laboratories, Inc.*
    250 F.3d 319 (5th Cir. 2001) ................................................................................... 15-16

*Hornbuckle v. State Farm Lloyds*
    385 F.3d 538 (5th Cir. 2004) ...........................................................................................17

*Huston v. U.S. Bank National Association*
    No. CIV H-12-3735, 2013 WL 12140972 (S.D. Tex. June 25, 2013)................................8

*Martin v. Franklin Capital Corp.*
    546 U.S. 132 (2005)..........................................................................................................17

*Miller v. Giesecke & Devrient America Inc.*
    No. 3:06-CV-1466-D, 2007 WL 518557 (N.D. Tex. Feb. 20, 2007) ...................... *passim.*

*Miller v. Home Depot, U.S.A., Inc.*

199 F. Supp. 2d 502 (W.D. La. 2001)...........................................................................8 n.5

*Navarro Savings Association v. Lee*
446 U.S. 458 (1980)........................................................................................... 7-8

*New Orleans Public Service, Inc. v. Council of New Orleans*
833 F.2d 583 (5th Cir. 1987) .............................................................................10

*Orix Credit Alliance, Inc. v. Wolfe*
212 F.3d 891 (5th Cir. 2000) ........................................................................10, 17

*Smallwood v. Illinois Central Railroad Co.*
385 F.3d 568 (5th Cir. 2004) ............................................................................ 8-9

*Superior Air Parts, Inc. v. Kubler*
No. 3:14-CV-3492-D, 2015 WL 567223 (N.D. Tex. Feb. 11, 2015) .................8

*Underwriters at Interest on Cover Note JHB92M10582079 v. Nautronix, Ltd.*
79 F.3d 480 (5th Cir. 1996) ..............................................................................12

*Utica Lloyds of Texas v. Mitchell*
138 F.3d 208 (5th Cir. 1998) .......................................................................10 n.6

*Vinings Ins. Co. v. Byrdson Services, Inc.*
No. 1:14-CV-525, 2016 WL 3567057 (E.D. Tex. June 13, 2016)....................15

## Other Authorities

28 U.S.C. § 1442.................................................................................................1

28 U.S.C. § 1447(c) ...........................................................................................17

Defendants Hartford Accident and Indemnity Company ("Hartford A&I") and First State Insurance Company ("First State") (collectively, "Hartford"), respectfully submit this memorandum of law in opposition to Plaintiffs Boy Scouts of America ("BSA"), Connecticut Yankee Council ("Connecticut Council"), Spirit of Adventure Council ("Spirit Counsel"), Aloha Council and Cascade Pacific Council's ("Cascade Council") (collectively, "Plaintiffs") Motion to Remand (the "Motion").   Complete diversity exists among all proper parties to this action because Connecticut Council, the only non-diverse plaintiff, has no stake in this action and is not a proper plaintiff.   The Court should deny Plaintiffs' motion to remand.

## **INTRODUCTION**

This Motion is Plaintiffs' attempt to avoid this Court's exercise of jurisdiction over an insurance coverage dispute that is really between BSA and Hartford.   Plaintiffs filed this action in Texas state court on June 6, 2018, seeking damages and declaratory relief regarding Hartford's alleged coverage obligations to BSA for approximately 200 underlying sexual abuse lawsuits. BSA is a Texas domiciliary, while Hartford and First State are located in Connecticut.   Under the general removal statute, 28 U.S.C. § 1442, a defendant in a civil action may remove an action to the district court where the action is pending if there is complete diversity as between each of the plaintiffs and each defendant.   There is no dispute, therefore, that if BSA and Hartford were the only parties, removal of this case would be appropriate.

BSA, however, did not name only itself as plaintiff.   Rather, its petition in the Texas state court names several of the local Boy Scout councils.   But, while the plaintiffs in the underlying lawsuits have named at least 33 separate local councils, BSA added only four of those councils to its coverage action against Hartford, including, not coincidentally, the Connecticut Council,

which is a Connecticut domiciliary.[1]  If Connecticut Council were a legitimate party to the coverage dispute that would destroy diversity, and removal would be improper.  Upon obtaining discovery, however, Hartford learned that Connecticut Council had paid neither defense fees nor settlements for any of the claims at issue, nor is there any reason to conclude that it will be obligated to do so in the future, because BSA has paid and continues to pay all defense expenses and settlements.  The Connecticut Council has no real stake in the outcome of the coverage dispute; its fees and liabilities are going to be paid for by someone else either way.  But that is not to say that the Connecticut Council did not serve a purpose; it clearly did.  By adding a Connecticut entity to the plaintiffs' side of the ledger, BSA hoped to avoid removal of this case.[2]  However, BSA *agrees* that a plaintiff is misjoined if it is joined merely to defeat diversity and cannot state an appropriate claim for relief.

That is precisely the case here.  The Connecticut Council does not dispute that it has paid neither defense nor indemnity for any of the underlying claims at issue.  It does not have any damages that a breach of contract claim could remedy.  Nor is it sufficient that it has asserted a declaratory judgment count.  Plaintiffs are correct that there is a lawsuit pending in which the Connecticut Council is a defendant.  Their contention that the Connecticut Council "might" be called upon to pay something for the defense of that claim ignores that BSA pays for legal counsel, enters into settlements to protect both itself and the local council, obtains releases for

---

[1]      BSA also named a Massachusetts council (Spirit Council) as a plaintiff, likely because it believed that one of the two Hartford defendants (First State) is a Massachusetts domiciliary.  *See* Ex. 2.A at App. 014 (Original Petition).  Because First State is a Connecticut domiciliary, the addition of the Massachusetts council as a plaintiff does not affect diversity, though it does reflect BSA's intent in joining the local councils.

[2]      BSA's strategy nearly worked.  Hartford did not receive written discovery establishing Connecticut Council's lack of a legitimate interest until May 8, 2019, 337 days after the original petition was filed in state court.  *See* Ex. 2.B at App. 031 (Connecticut Council Responses).  Had those responses been provided 30 days later, it may have been too late for Hartford to remove.

the local council and assumes full responsibility (along with its insurers) for any settlement.  No

other action is required of the local council, and no payment is involved at all.  Plaintiffs have

offered no evidence to suggest that the pending *John Doe* claim will be treated any differently.

Under these facts, the Connecticut Council cannot show that it has suffered *any* hardship at all

that could support a declaratory judgment claim, a claim for damages, or any other claim.

Indeed, the Fifth Circuit has held that potential injuries far less speculative are insufficient and/or

do not reflect any meaningful hardship to permit pursuing claims for declaratory relief.

Because the Connecticut Council has no stake in the outcome of this case, its only

purpose is as a placeholder to defeat diversity.  This Court should ignore the domicile of the

Connecticut Council for jurisdictional purposes and deny the motion to remand.

## FACTUAL BACKGROUND

**A.     Hartford Defends BSA in the Underlying Claims.**

Hartford issued a number of primary, umbrella and/or excess policies to BSA for certain

periods from September 21, 1971 to January 1, 1978.  For several years, BSA tendered

underlying abuse lawsuits to Hartford, which defended and settled claims on behalf of BSA.  *See*

Ex. 1 at App. 003 (Kubas Aff. ¶¶ 4, 5).  BSA, not the local councils, interacted with Hartford,

including communicating regarding selection of counsel, settlements and resolving any disputes.

*See id.*  Interactions between Hartford and the local councils were few, if any.  Over the past

decade, Hartford and BSA have had at least two disputes regarding the availability and scope of

coverage available under the Hartford policies.  Hartford and BSA are parties to two separate

written settlement agreements resolving those prior disputes; neither Connecticut Council nor

any of the other local councils are parties to those agreements.[3]  *See id. ¶* 6 at App. 003.  In

---

[3]     The terms of those agreements (but not their existence) are confidential.  Accordingly, Hartford does not attach them here.

3

other words, the local councils have been bystanders with respect to the defense and resolution of the underlying abuse claims, as well as with respect to any questions regarding insurance coverage for those claims.

**B.      This Action Arises Out Of A Dispute Between Hartford and BSA -- Not the Local Councils -- Regarding The Terms and Conditions Of The Hartford Policies**

As BSA notes in its motion, Hartford and BSA disagree on a number of issues regarding coverage obligations under the Hartford policies.  BSA's brief characterizes the parties' dispute as one centered around the "number of occurrences" and, to be fair, that is one hotly disputed issue.  The number of occurrences, however, is not the parties' only disagreement.  Hartford also contends that it does not have coverage obligations for some or all of the underlying claims because BSA expected injury to scouts to result from its conduct, and because BSA has failed to meet some or all of its obligations under the policies, including the obligation to provide notice and to cooperate in the defense of the underlying claims.  *See* Ex. 2.C at App. 046 (Answer). Hartford has made its positions on these issues clear for several years, dating back to at least 2012, and BSA has been vocal in its disagreement.  *See* Ex. 1 at App. 003 (Kubas Aff. ¶ 7). None of the local councils, however, has ever written separately to Hartford to express disagreement with Hartford's positions regarding these issues.  *See id*.

BSA filed this action against Hartford on June 5, 2018 in the District Court of Dallas County, Texas, 95th Judicial District.  *See* Ex. 2.A at App. 014 (Original Petition).  In addition to BSA, the plaintiffs in this action are the four Local Councils.  *See id.* at App. 018-App. 019 (Original Petition ¶¶ 2-6)  The Petition asserts four causes of action:  (1) Declaratory Judgement; (2) Breach of Contract; (3) Violations of Chapter 542 of the Texas Insurance Code; and (4) Attorney Fees.  *Id.* at App. 023- App. 028 (Original Petition ¶¶ 33-70).  Nowhere in the Petition, however, does it specify which of these claims the Connecticut Council is pursuing against

4

Hartford, the factual basis (if any) for Connecticut Council's claims, nor any damages it allegedly has suffered. Hartford has continued to participate in funding settlements of underlying claims during the pendency of this coverage case. *See* Ex. 1 at App. 003 (Kubas Aff. ¶ 8). Nothing suggests that the Connecticut Council is a signatory to any of the underlying settlement agreements.[4]

## C.   Hartford's Discovery Demonstrates That the Connecticut Council Has No Legal Interest and is Misjoined, Warranting Removal.

Plaintiffs' Petition does not identify the underlying abuse claims for which they are seeking coverage, nor does it specify any plaintiff's damages. Accordingly, Hartford diligently pursued discovery aimed at uncovering the basis for each plaintiff's allegations. On August 23, 2018, Hartford served its First Set of Interrogatories on each plaintiff. *See e.g.,* Ex. 2.D at App. 059 (Hartford First Set of Interrogatories to Connecticut Council). Among other things, Hartford's Interrogatories asked that BSA and each Plaintiff Council "[i]dentify each Abuse Lawsuit for which You are seeking coverage from Hartford." *See id.* at App. 078 (Interrogatory No. 2 to Connecticut Council) and Ex. 2.D at App. 066 (Interrogatory No. 1 to BSA). Neither the Connecticut Council nor any of the other council plaintiffs responded by identifying specific claims. BSA, on the other hand, responded to the interrogatory (following extensive meet and confer discussions) by producing, on January 31, 2019, "the list of claims that compromise the 'Underlying Lawsuits' in the Original Petition against Hartford" on January 31, 2019. *See* Ex. 2.F at App. 082 (January 31, 2019 email).

The Underlying Claims list includes 201 claims asserted against BSA and 33 local councils, yet BSA included only four of those councils (including two from states that plaintiffs

---

[4]    Moreover, BSA does not dispute that many of the claims that Hartford is not defending and has not settled are cases that BSA (and the councils) *never tendered* to Hartford. *See* Ex. 1 at App. 003 (Kubas Aff. ¶ 9).

believed matched the defendants' domiciles) as plaintiffs in this action.  Unlike Connecticut

Council and Spirit Council, the non-plaintiff councils are not residents of Connecticut (the

domicile of Hartford A&I) or Massachusetts (the incorrectly alleged domicile of First State).  *See*

Ex. 2.A at App. 018-App. 019 (Original Petition ¶¶ 2-6).  BSA has offered no explanation as to

why Connecticut Council and Spirit Council were named as plaintiffs in this case, while 29 other

local councils that are defendants in underlying cases were not.

After receiving the list of Underlying Claims, Hartford served interrogatories on

Plaintiffs seeking information about the defense and indemnity amounts paid by each Plaintiff.

Councils.  On May 8, 2019, Connecticut Council served its responses stating not only that it has

not paid any defense costs for the underlying claims, but that it has not even been *asked* to pay

for the defense of any underlying claims:

**INTERROGATORY NO. 1:**

For each Connecticut Council Claim, state the amount of Defense
Costs that Connecticut Council has paid or has reimbursed BSA.

**ANSWER:**

Connecticut [Council] objects to Interrogatory No. 1 on the
grounds set forth in its General Objections and Objections to Definitions
and Instructions, and on the grounds that it is overly broad and unduly
burdensome.  Connecticut [Council] further objects to this Interrogatory
on the grounds that it is premised on incorrect factual and legal
assumptions.

At this time, Connecticut [Council] is not aware of BSA seeking
payment or reimbursement from Connecticut for defense costs.  However,
Connecticut[] [Council's] investigation is ongoing.  Therefore, subject to
and without waiving any of the foregoing objections, Connecticut
[Council] reserves the right to supplement this Interrogatory in the event
that Connecticut [Council] locates relevant, responsive, and non-
privileged information sought by this Interrogatory.

Ex. 2.B at App. 038 (Connecticut Council Responses at Interrogatory No. 1).  Similarly, in

response to Hartford's interrogatories, Connecticut Council conceded that it has neither paid any

indemnity nor even been asked to pay indemnity towards the settlement of even a single

underlying claim:

### INTERROGATORY NO. 2:

>For each Connecticut Council Claim, state the amount of
>Indemnity Costs that Connecticut Council has paid or has reimbursed
>BSA.

>### ANSWER:

>Connecticut [Council] objects to Interrogatory No. 2 on the
>grounds set forth in its General Objections and Objections to Definitions
>and Instructions, and on the grounds that it is overly broad and unduly
>burdensome.  Connecticut [Council] further objects to this Interrogatory
>on the grounds that it is premised on incorrect factual and legal
>assumptions.

>At this time, Connecticut [Council] is not aware of BSA seeking
>payment or reimbursement from Connecticut for indemnity costs.
>However, Connecticut[] [Council's] investigation is ongoing.  Therefore,
>subject to and without waiving any of the foregoing objections,
>Connecticut [Council] reserves the right to supplement this Interrogatory
>in the event that Connecticut [Council] locates relevant, responsive, and
>non-privileged information sought by this Interrogatory.

*Id.* at App. 038 - App. 039 (Connecticut Council Responses at Interrogatory No. 2).  Connecticut

Council's other responses further confirmed that it has not received any request from BSA that it

pay any amounts on account of the Underlying Lawsuits that it could, in turn, seek from

Hartford.  *See id.* at App. 039 - App. 040 (Connecticut Council Responses at Interrogatory Nos.

3-4).  After receiving Connecticut Council's interrogatory responses indicating that it has

suffered no damages, and that there is no indication it will suffer any future damages, Hartford

timely removed this action to federal court.

### ARGUMENT

7

A.      **The Court Must Disregard the Citizenship of Connecticut Council Because it is Misjoined as a Plaintiff.**

Diversity jurisdiction ordinarily requires complete diversity among the parties.  BSA and Hartford agree, however, that the citizenship of improperly joined parties is ignored for diversity purposes.[5]  *See Navarro Sav. Assoc. v. Lee*, 446 U.S. 458, 461 (1980) ("[A] federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy."); *see also Flagg v. Stryker Corp.*, 819 F.3d 132, 136 (5th Cir. 2016) ("[I]f the plaintiff improperly joins a non-diverse defendant, then the court may disregard the citizenship of that defendant, dismiss the non-diverse defendant from the case, and exercise subject matter jurisdiction over the remaining diverse defendant[s].").  Courts in the Fifth Circuit have repeatedly recognized that a party with no real stake in an action cannot be added for the purpose of defeating diversity jurisdiction, and that the courts will not reward those efforts. "[T]he Federal courts may and should take such action as will defeat attempts to wrongfully deprive parties entitled to sue in the Federal courts of the protection of their rights in those tribunals."  *Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568, 575 (5th Cir. 2004) (quoting *Alabama Great S. Ry. Co. v. Thompson*, 200 U.S. 206, 218 (1906)); *see also Huston v. U.S. Bank Nat'l Assoc.*, No. CIV H-12-3735, 2013 WL 12140972, at *2 (S.D. Tex. June 25, 2013) ("[A] case may be removed despite a non-diverse defendant, if that defendant was named for purpose of destroying diversity and was thus improperly joined.") (citing *Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 542 (5th Cir. 2004)).

---

[5] BSA also does not dispute that the misjoinder doctrine applies to plaintiffs as well as defendants.  *See Miller v. Home Depot, U.S.A., Inc.*, 199 F. Supp. 2d 502, 508 (W.D. La. 2001) ("The fraudulent joinder doctrine can be applied to the alleged fraudulent joinder of a plaintiff.") (collecting cases); *see also Superior Air Parts, Inc. v. Kubler*, No. 3:14-CV-3492-D, 2015 WL 567223, at *6 (N.D. Tex. Feb. 11, 2015) ("This court and others have applied the improper joinder doctrine to non-diverse plaintiffs.").

Here, Connecticut Council has paid nothing, either in defense or indemnity, and it therefore has no cognizable stake in the outcome of this case.  Its presence in the state court case serves no purpose other than to defeat diversity.  Hartford and BSA agree that a defendant can establish that a plaintiff has no legitimate purpose and has been misjoined by showing either (1) that the plaintiff committed actual fraud in pleading jurisdictional facts or (2) the plaintiff has no stake in the action and therefore cannot recover from the defendant.  *See Smallwood¸* 385 F.3d at 572-73.  BSA's analysis of this test, however, is fatally flawed.  In evaluating the second factor, BSA asserts that all the Court need do is "conduct a 'Rule 12(b)(6)-type analysis'" to determine whether Connecticut Council has stated a viable claim.  Motion to Remand at 11 (June 21, 2019) [ECF No. 4] ("Motion").  From there, BSA concludes that Connecticut Council is a proper plaintiff in the state court case because it has properly pled a declaratory judgment claim in the Petition.  *See* Motion at 11-12.

That is an incomplete statement of the standard.  The Fifth Circuit has emphasized that the Court need not rest simply on the allegations of the Petition or accept the plaintiff's facts as stated; rather, where a plaintiff's pleading has "misstated or omitted discrete facts that would determine the propriety of joinder," the Court is required to pierce the pleadings and look to actual facts to determine jurisdiction.  *See Smallwood*, 385 F.3d at 573; *Badon v. RJR Nabisco Inc.*, 224 F.3d 282, 389 n.10. (5th Cir. 2000).  Examination of the actual facts, not just the pleadings, is particularly appropriate here; removal is based not just on the allegations of the petition but on facts developed through discovery.  Indeed, BSA's own motion repeatedly refers to facts outside the Petition, including the list of claims that BSA provided in discovery and pendency of the underlying *John Doe* lawsuit.  *See* Motion at 11.  But BSA cannot cherry-pick the facts here.  The Court is required to consider all relevant facts, and they demonstrate that the

Connecticut Council cannot assert its putative declaratory judgment claim because it is not justiciable.

## B.    Connecticut Council's Claim is Speculative and Hypothetical, and Therefore Cannot Stand as a Basis to Destroy Diversity.

BSA's justiciability analysis is straightforward.  It alleges that Connecticut Council is an insured under the Hartford Policies and that Connecticut Council is a defendant in the pending *John Doe* action.  As a result, in BSA's view, all other facts are irrelevant, including the fact that Connecticut Council has never been required (or even asked) to pay anything on account of the *John Doe* action or any other case.  *See* Motion at 14-15.

That analysis falls short.  To state a justiciable declaratory judgment claim, a party cannot simply state that it is an insured and wants coverage.  *See* Motion at 14.  Rather, the claim for declaratory relief must meet federal standards for ripeness.[6]  *See, e.g., Bell v. Bank of Am. Home Loan Servicing LLP*, No. 4:11-cv-02085, 2012 WL 568755, at *8 (S.D. Tex. Feb. 21, 2012) ("When a declaratory judgment action is filed in state court and is subsequently removed to federal court, it is converted into one brought under the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.").  The Fifth Circuit has recognized that a declaratory judgment claim is unripe, and therefore not justiciable "when the case is abstract or hypothetical.  The key considerations are 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'"  *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 896 (5th Cir. 2000) (quoting *Abbott Lab. v. Gardner*, 387 U.S. 136, 149 (1967)); *New Orleans Pub. Serv., Inc.*

---

[6]    The Fifth Circuit has held that, for *Erie* purposes, the Texas Declaratory Judgment Act (TDJA) "is not substantive law."  *Camacho v. Tex. Workforce Comm'n*, 445 F.3d 407, 409 (5th Cir. 2006); *Utica Lloyds of Texas v. Mitchell*, 138 F.3d 208, 210 (5th Cir. 1998).  The result under the TDJA would be the same, however, because the TDJA, like the Federal Declaratory Judgment Act, prohibits advisory opinions and does not permit the maintenance of claims that are "hypothetical" or "contingent."  *Texas Dep't of Pub. Safety v. Moore*, 985 S.W.2d 149, 153 (Tex. App. -- Austin 1998 no pet.).

*v. Council of New Orleans*, 833 F.2d 583, 586-87 (5th Cir. 1987) (collecting cases).  A cause of action must satisfy both prongs of this analysis to be justiciable.  *See id.*

BSA pays lip service to this standard by stating, in conclusory fashion, that Connecticut Council's "claims are neither contingent nor hypothetical."  Motion at 14 (citing *Miller v. Giesecke & Devrient Am. Inc.*, No. 3:06-CV-1466-D, 2007 WL 518557, at *4 (N.D. Tex. Feb. 20, 2007).  But BSA neither provides any support for that allegation, nor does it explain how that applies to a putative plaintiff that has paid nothing and been asked to pay nothing in the context of the considerations of "fitness" and "hardship" that the Fifth Circuit has held must be satisfied. (Indeed, BSA never even mentions those requirements.)  In fact, both of those considerations demonstrate that any putative claims by Connecticut Council are *not* ripe for consideration.

1.     **The Issues That Would Have To Be Resolved Are Not Fit For Judicial Resolution.**

Connecticut Council contends that Hartford is obligated potentially to reimburse it for defense costs it incurs in connection with the *John Doe* lawsuit and that it is entitled to obtain legal declarations regarding the policies to enforce that obligation.[7]  *See* Motion at 7.  But whether or not Hartford is responsible to reimburse defense costs cannot be decided in the abstract or on a hypothetical basis.  It must be decided with reference to particular costs that Connecticut Council has paid (or at least been demanded to pay) and for which Connecticut Council is seeking payment from Hartford.  Here, however, it appears the obligations are being assumed entirely by BSA.  Indeed, it was BSA, not the Connecticut Council, that provided Hartford with notice of the *John Doe* lawsuit in August 2, 2018 -- two months *after* BSA filed

---

[7]     To the extent, in response, BSA alleges that the Connecticut Council is seeking subordinate declarations that are legal in nature, such as a declaration that the policies remain in force, or that each claim is subject to a separate occurrence limit, that contention is unavailing.  For one thing, those declarations are themselves, highly fact-specific.  *See, e.g., Stonewall Ins. Co. v. Modern Expl., Inc.*, 757 S.W.2d 432, 436 (Tex. App. -- Dallas 1988) (finding issues of fact as to whether policy coverage was voided due to failure to comply with policy conditions).

11

this suit.  *See* Ex. 1.A at App. 005 (August 2, 2018 letter).  In proving that notice, the named

insured was identified *solely* as "Boy Scouts of America, Inc. ('BSA')" without any mention of

the Connecticut Council.  *See id.*  Moreover, the letter was sent on BSA letterhead and stated that

the underlying demands were being asserted "against BSA."  The letter goes on to provide

contact information for the defense counsel and coverage counsel for "BSA" without any

mention of Connecticut Council and states that "BSA" is reserving all of its rights under the

applicable insurance policies.  *See id.*  BSA's own correspondence leaves no doubt that it is the

real party in interest.

   Consistent with that fact, the Connecticut Council concedes that BSA has paid any past

defense costs and that BSA has not declined to pay any current defense obligations.  Nor is BSA

seeking reimbursement from Connecticut Council.  *See* Ex. 2.B at App. 038 (Connecticut

Council Response to Interrogatory No. 1).  Presumably, Connecticut Council does not intend to

seek a declaration as to costs that BSA has paid, nor would it have standing to do so.  *See*

*Underwriters at Interest on Cover Note JHB92M10582079 v. Nautronix, Ltd.*, 79 F.3d 480, 484

(5th Cir. 1996) (noting that the party paying loss is real party in interest "and must sue in its own

name").

   The only defense costs that Connecticut Council may be required to pay, and that could

warrant a declaration as to rights and obligations, are *future* costs that are not yet incurred.  But

those costs are far too uncertain to form the basis of a claim for declaratory relief.  The course of

conduct between BSA and its councils shows that it is entirely speculative that Connecticut

Council will ever be asked to pay *any* of these costs.  It is BSA, not the Connecticut Council, that

is the proper party in interest.  BSA may be able to state a claim to recover defense costs that it

pays (which Hartford disputes), but that does not confer standing on Connecticut Council to seek legal declarations regarding costs that everyone understands BSA will pay.[8]

### 2. Connecticut Council Cannot Establish Any "Hardship" Whatsoever.

Connecticut Council's discovery responses concede that it has not paid a single dime for defense or indemnity that is at issue in this case. And it concedes that there is no evidence that is likely to change in the future. With no showing that it has suffered any loss at all, the Connecticut Council cannot establish that it is suffering any hardship that a declaratory judgment is necessary to remedy. Indeed, Connecticut Council is essentially asking this Court for permission to pursue declaratory relief in order to obtain *nothing* from Hartford, because it is paying neither defense nor indemnity. Such a claim is wholly unnecessary.

In this regard, the Flowers affidavit is particularly telling. The Flowers affidavit is the only evidence that BSA submitted from the Connecticut Council as support for the motion to remand. Other than a conclusory legal allegation that the Council "continues to incur defense costs," the Flowers affidavit offers no *factual* support for the contention that the Council has suffered, or is likely to suffer, any harm in the absence of a declaratory judgment. Affidavit of Charles Flowers ¶ 11 (June 21, 2019) [ECF No. 5-3] ("Flowers Aff."). Neither Mr. Flowers nor the council produced any invoices addressed or sent to the council for payment. Nor did they produce any engagement letter or any other document that would obligate the council to pay legal fees or expenses incurred in the defense of the *John Doe* action. Nor did Mr. Flowers (or anyone else) produce any organizational charter, correspondence with BSA or other documents

---

[8]   Moreover, even if Connecticut Council were likely to pay for costs going forward, they would be a moving target. Until it is resolved what those costs are, it is impossible to resolve whether those costs are reasonable, whether they show that Connecticut Council expected that bodily injury would result from its conduct, or whether there are other defenses that relieve Hartford of its coverage obligations. In other words, factual issues concerning those costs would preclude any final ruling on the parties' rights and obligations for those costs.

making the Connecticut Council liable to repay any defense costs that BSA reimbursed on its

behalf.  If there were any documents making Connecticut Council liable for defense costs in the

*John Doe* action, they could have been produced either in discovery or as part of this motion.

Neither BSA nor Connecticut Council has done so.  BSA's motion, in other words, offers no

reason even to suspect that the *John Doe* action is being handled differently from the extensive

course of dealing with BSA, where the national organization retains and pays defense counsel.

Connecticut Council suffers no hardship at all from a ruling that its claim is not justiciable

because BSA will continue to assume the defense of the *John Doe* action and seek

reimbursement from Hartford.

Because BSA is the real party in interest, any harm that might occur to Connecticut

Council in the future is entirely speculative; it depends on the "what if" scenario where BSA

does an abrupt about-face and starts to require Connecticut Council to pay for its own defense.

Not only has BSA not shown that is likely (or even a real possibility), but rather, the evidence is

that it is extremely *unlikely* to happen.  That theoretical possibility is not sufficient to confer

standing; indeed, the Fifth Circuit has recognized that a "mere theoretical possibility of recovery

under local law will not preclude a finding of improper joinder."  *Badon v. RJR Nabisco Inc.*,

236 F.3d 382, 286 n.4 (5th Cir. 2000).  Indeed, nearly thirty local councils that are named as

defendants in the 201 claims that are at issue have *not* joined this lawsuit as plaintiffs for

precisely that reason; none of the local councils have any real stake in this coverage dispute.  The

Connecticut Council is not situated any differently.  Because Connecticut Council's declaratory

judgment claim is non-justiciable, the Court must ignore its presence for diversity purposes.

Removal here was proper.

**C.**    **BSA's Authorities Are Not on Point and Do Not Authorize Remand Here.**

14

None of the cases that BSA cites in its motion supports the argument that Connecticut Council has a justiciable claim here.  Most of the cases that BSA cites in its motion have nothing to do with whether Connecticut Council has a justiciable claim in this action.[9]  The few that do, moreover, say nothing about a putative plaintiff with no real stake in the outcome of any declarations.  In *Vinings*, for example, the district court found that an *insurer* has stated a ripe claim for declaratory judgment where the underlying suit specifically alleged that the insurer had failed to pay the policyholder's claims.  *See Vinings Ins. Co. v. Byrdson Servs., Inc.*, No. 1:14-CV-525, 2016 WL 3567057, at *1 (E.D. Tex. June 13, 2016) ("In the *Byrdson* lawsuit pleading, Byrdson also claimed that its insurer -- the plaintiff here -- wrongfully denied Byrdson's claims arising out of "an event", presumably related to the underlying facts of the Byrdson lawsuit.").  Connecticut Council, in contrast, *concedes* that it has no claim for indemnity -- because BSA and its insurers (including Hartford) have paid them in full.

Similarly, *Bailey* involved a declaratory judgment by *insurers* seeking declarations that they had no obligation to defend or indemnify a case they had been asked to defend.  *See Am. States Ins. Co. v. Bailey*, 133 F.3d 363, 368 (5th Cir. 1998).  In that case, the parties *agreed* that there was a justiciable controversy with respect to the insurers' duty to defend, undoubtedly because the insureds were looking to recoup costs they were spending on their own defense.  *See id.* at 368 n.3 ("Cooke, Levin, FUMC and the four associate ministers do not contest the jurisdiction of the district court to decide the issue of the duty to defend.").  Both *Vinings* and *Bailey*, in other words, stand for nothing more than the unexceptional proposition that it is

---

[9]     Of those cases, the few that actually apply the misjoinder doctrine have facts that diverge widely from those at issue here.  In *Miller*, which BSA cites repeatedly, this Court was faced with interpretation of a non-compete agreement.  *See Miller*, 2007 WL 518557, at *5.  Faced with an allegation that the defendant had already threatened to enforce the non-compete agreement to prevent a former employee from working for a new company, Judge Fitzwater reached the commonsense conclusion that the new company had standing to seek a declaration regarding the non-compete, and was therefore a proper party.  *See id.*  This case presents none of those facts.

15

possible for a coverage dispute to give rise to a ripe declaratory judgment claim while underlying proceedings remain pending.  Neither case holds that a ripe dispute exists when that policyholder has suffered (and will suffer) no loss -- defense or indemnity -- that the insurer has failed to pay.

Moreover, BSA ignores Fifth Circuit law holding that the Court cannot speculate to find an injury that would warrant bring a claim for declaratory relief.  *See Heritage Bank v. Redcom Labs., Inc.*, 250 F.3d 319, 322-24 (5th Cir. 2001).  In *Heritage Bank*, the Fifth Circuit held that an applicant for a letter of credit (Fiber Wave) had been misjoined as a defendant in a declaratory judgment action between the issuing bank (Heritage) and the beneficiary for whom the letter was issued (Redcom) concerning whether Heritage wrongfully refused to honor the letter of credit on presentment.  If Fiber Wave had been a proper party, diversity would have been destroyed, requiring remand to state court.  Heritage asserted that it was necessary to join Fiber Wave because, if Heritage were required to honor the letter of credit, that would have triggered Fiber Wave's obligation to reimburse Heritage; consequently, Fiber Wave had an interest in the outcome of the case.  The Fifth Circuit rejected that argument, holding that, while Fiber Wave may be interested in the outcome, it did not have a legal interest in the proceedings because any obligation by Fiber Wave to pay Heritage was expressly contingent upon events that had not yet occurred, namely, Heritage honoring Redcom's presentation of the letter of credit for payment.  Consequently, the Court concluded that any claim against Fiber Wave was speculative, and that Fiber Wave was therefore misjoined as a defendant.  *See id.*

*Heritage Bank* stands for the proposition that the Court should not speculate or strain to find a potential claim.  Connecticut Council's claim here is far more speculative.  In *Heritage Bank*, there was little doubt that the bank would turn to Fiber Wave for payment if Redcom was entitled to payment under the letter of credit.  Here, it is unlikely that Connecticut Council will

16

be required or asked to pay anything.  Whether Hartford is responsible to reimburse costs for the party that actually pays them may be a question in this action.  There is little disagreement, however, that the Connecticut Council will not be that party.  Accordingly, there is no "real and substantial controversy involving genuine conflict of tangible interests."  *See Miller*, 2007 WL 518557, *4.  Rather, any harm to Connecticut Council is theoretical in nature; BSA cannot establish that harm to the Connecticut Council "is sufficiently likely to happen to justify judicial intervention."  *Orix*, 212 F.3d at 897 (quoting *Chevron U.S.A., Inc. v. Traillour Oil Co.*, 897 F.2d 1138, 1153 (5th Cir. 1993)).  Connecticut Council has no justiciable claim in this case.

Finally, BSA is not entitled to recover its costs, irrespective of whether the Court's determination regarding remand.  Courts may award costs and fees under 28 U.S.C. § 1447(c) only where the removing party lacked an "objectively reasonable" basis for seeing removal.  *See, e.g.*, *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139 (2005); *Hornbuckle*, 385 F.3d at 541; *Miller*, 2007 WL 518557, at *6.  Removal is objectively reasonable, even if ultimately incorrect, if there is any "colorable" argument for removal.  *See Miller*, 2007 WL 518557, at *6 (denying costs where removing defendant had "a colorable -- albeit erroneous -- argument that DLR lacked a sufficient interest" in the action).  Here, Hartford's arguments for removal were, at the very least, reasonable; ample case law indicates that a party that has suffered no loss, and is unlikely to suffer any loss, has no legal interest that warrants joinder.

## CONCLUSION

For the foregoing reasons, the Court should deny BSA's Motion to Remand and its request for costs.

Dated:  July 12, 2019

Respectfully submitted,

*/s/ Todd M. Tippett*

Todd M. Tippett
Texas Bar No. 24046977
ttippett@zelle.com
ZELLE LLP
901 Main Street, Suite 4000
Dallas, Texas 75202-3975
Telephone:  214-742-3000
Facsimile:  214-760-8994

Joshua D. Weinberg (*pro hac vice*)
SHIPMAN & GOODWIN LLP
1875 K Street NW
Washington, D.C. 20006-1251
Telephone:  202-469-7750
Facsimile:  202-469-7751

ATTORNEYS FOR DEFENDANTS
HARTFORD ACCIDENT AND
INDEMNITY CO., FIRST STATE
INSURANCE CO.

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of this Defendants' Opposition to Plaintiffs'

Motion to Remand has been served this 12th day of July, by electronic filing as follows:

Ernest Martin, Jr.
State Bar No. 13063300
ernestmartin@haynesboone.com
Carla Green
State Bar No. 24097762
Carlagreen@haynesboone.com
**HAYNES AND BOONE, L.L.P.**
2323 Victory Ave., Suite 700
Dallas, Texas 75219
Telephone:  (214) 651-5000
Telecopier:  (214) 651-5940
**ATTORNEYS FOR PLAINTIFFS**

*/s/ Todd M. Tippett* _____
Todd M. Tippett

19