UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BOY SCOUTS OF AMERICA; CONNECTICUT YANKEE COUNCIL; SPIRIT OF ADVENTURE COUNCIL; ALOHA COUNCIL; and CASCADE PACIFIC COUNCIL, | § § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:19-CV-1318-B |
| THE HARTFORD ACCIDENT & INDEMNITY COMPANY and FIRST STATE INSURANCE COMPANY, | § § § § § | |
| Defendants. | § | |

# MEMORANDUM OPINION AND ORDER

This is an insurance coverage dispute that has been removed from a Texas state court. Boy Scouts of America and several of its local councils—specifically, Connecticut Yankee Council, Spirit of Adventure Council, Aloha Council, and Cascade Pacific Council—sued their insurer, Hartford. The coverage dispute arises out of sexual-abuse lawsuits filed against the Boy Scouts and these councils. Before the Court is Plaintiffs' Motion to Remand (Doc. 4). The issue the motion presents is whether the parties have complete diversity of citizenship. Currently, it appears as if there is not complete diversity—Plaintiff Connecticut Yankee Council and both Defendants are citizens of Connecticut. However, Defendants removed the case to federal court on the ground that there is federal diversity jurisdiction because the Boy Scouts improperly joined Connecticut Yankee Council.

For the reasons stated above, the Court **DENIES** Plaintiffs' Motion to Remand (Doc. 4) **WITHOUT PREJUDICE**.

# I.

# BACKGROUND

Boy Scouts of America is a well-known youth-development organization that operates across the country. Doc. 1-2, Original Pet., ¶ 13. The Boy Scouts works with local organizations to implement its scouting program. *Id.* ¶ 14. These organizations—often churches, clubs, or other educational groups—are supported by local councils. *Id.*

Boy Scouts of America and several of its local state councils filed this lawsuit in Texas state court against Defendants The Hartford Accident and Indemnity Company and First State Insurance Company (referred to together as "Hartford") for the improper denial of coverage under various general and excess liability policies issued by Hartford. *See generally id.*

The issue before the Court is whether one of the local councils, Connecticut Yankee Council ("Connecticut Council"), was improperly joined in this insurance-coverage dispute in order to defeat diversity jurisdiction.

The Boy Scouts maintains a "comprehensive, broad insurance program" for "its many activities and local councils throughout the country[.]" *Id.* ¶ 15. Relevant to this case, the Boy Scouts purchased several general liability, umbrella, and excess liability insurance policies from Hartford. Doc. 4, Mot. to Remand, 4. Connecticut Council, among other local councils, is named as an insured in these policies. *See, e.g.*, Doc. 5-7, Pls.' App., 370, 438.[1] Under the policies, Hartford agreed to cover sums that the Boy Scouts would "be obligated to pay as damages because of personal

---

[1] As Plaintiffs point out, Connecticut Council is not specifically named in these Hartford policies. But two prior councils that merged in 1998 to form Connecticut Council are. *See* Doc. 4, Mot. to Remand, 4 n.1 (noting that Quinnipac Council and Fairfield County Council, both named in the policies, merged to form Connecticut Council).

injury . . . ." Doc. 1-2, Orig. Pet., ¶ 21. Hartford also agreed to defend and indemnify the insured in personal injury suits. *Id.* ¶¶ 22–23.

Recently, the Boy Scouts and its local councils have been sued by various youth participants for sexual-abuse-related injuries suffered while participating in various scouting programs. *Id.* ¶ 16. These sexual-assault victims generally allege that the Boy Scouts and the respective local councils were negligent in failing to prevent the abuse. *Id.* ¶ 18.

The Boy Scouts and the local councils allege that some of these underlying sexual-abuse lawsuits are covered by their insurance policies with Hartford. *Id.* ¶ 25. They further allege that they provided Hartford with notice of these lawsuits, but that Hartford has denied its coverage obligations under the policies, including coverage for defense costs and indemnity payments associated with these lawsuits. *Id.* ¶¶ 26–27.

Connecticut Council is a defendant in one of the sexual-abuse lawsuits. Doc. 4, Mot. to Remand, 5 (citing Doc. 5-4, Pls.' App., 16 (John Does Compl.)). Four individuals that were previously youth participants in the Boy Scouts brought claims against Connecticut Council and others, alleging that between 1974 and 1976, their scout leader physically, mentally, and sexually abused them. *Id.* The case ("*John Does* lawsuit") is currently pending in Connecticut state court. *Id.* Plaintiffs here assert that the injuries the John Does allege in this Connecticut case trigger the relevant 1974–76 Hartford primary and excess policies. *Id.* Thus, Plaintiffs claim, Hartford is obligated to both defend and indemnify Connecticut Council against these claims. *Id.* (citing Doc. 5-6, Pls.' App., 171 (Hartford Primary Policy); Doc. 5-8, Pls.' App., 500 (Hartford Excess Policy)). Plaintiffs allege that they have notified Hartford of this suit, yet Hartford continues to deny that it has any obligation to defend or indemnify Connecticut Council in the suit. Doc. 4, Mot. to

Remand, 5–6.

On June 5, 2018, the Boy Scouts and local councils filed their Original Petition against Hartford in the District Court for the 95th Judicial District of Dallas County, Texas. Doc. 1-2, Orig. Pet. Plaintiffs assert the following claims against Hartford: (1) declaratory judgment; (2) breach of contract; and (3) violations of Chapter 542 of the Texas Insurance Code. *Id.* ¶¶ 33–57.

The case progressed in state court until May 31, 2019, when Hartford filed a notice of removal in this Court. Doc. 1, Notice of Removal. In its notice of removal, Hartford argues that the Court may exercise subject matter jurisdiction over this case under 28 U.S.C. § 1332, because although Connecticut Council and Hartford are citizens of Connecticut, Connecticut Council was improperly joined and thus its citizenship should not be considered for the purpose of assessing the validity of diversity jurisdiction. *Id.* at 2–7. Hartford alleges that, through initial discovery conducted in state court, it learned that Connecticut Council does not have a justiciable claim against Hartford in this action. *Id.* at 3–5.

On June 21, 2019, Plaintiffs filed a motion to remand the case to state court on the ground that Connecticut Council was properly joined and therefore diversity of citizenship does not exist. Doc. 4, Mot. to Remand, 1–3. The motion is now ripe for review. However, a wrinkle emerged while the motion was pending—the Boy Scouts filed a Chapter 11 case in the United States Bankruptcy Court for the District of Delaware. *See In re Boy Scouts of America*, Lead Case No. 20-10343 (Bankr. D. Del. Feb. 18, 2020). It appears that this proceeding remains unaffected by the automatic stay in place for the Chapter 11 case. *See* Doc. 20, Order, 1–2; *see also* Doc. 23, Defs.' Resp., 1 (concurring that automatic stay does not prevent the Court from ruling on the motion to remand). However, Defendants now assert that the Court has an independent basis for jurisdiction over this matter

because it is "related to" to a Chapter 11 case. *See* Doc. 23, Defs.' Resp., 3–4 (citing 28 U.S.C. § 1334(b)). The Court addresses both the motion to remand and the "related to" jurisdictional arguments below.

## II.

## LEGAL STANDARD

Motions for remand are governed by 28 U.S.C. § 1447(c), which provides that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." When considering a motion to remand, "[t]he removing party bears the burden of showing that federal jurisdiction exists and that removal was proper." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (citation omitted). Furthermore, "any doubt about the propriety of removal must be resolved in favor of remand." *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281–82 (5th Cir. 2007) (citations omitted).

The federal removal statute, 28 U.S.C. § 1441(a), generally permits a defendant to remove any civil action to federal court that falls within the original jurisdiction of the district courts. One such grant of authority is found in 28 U.S.C. § 1332. This statute provides the district courts with original jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States[.]" 28 U.S.C. § 1332(a)(1). However, removal is only proper in such cases if there is complete diversity of citizenship among the parties at the time the complaint is filed and at the time of removal. *See Coury v. Prot*, 85 F.3d 244, 249 (5th Cir. 1996).

That being said, a non-diverse defendant may be disregarded for the purpose of analyzing complete diversity if the non-diverse defendant was improperly joined. *See Cuevas v. BAC Home*

*Loans Servicing, LP*, 648 F.3d 242, 249 (5th Cir. 2011) (noting that the "improper joinder doctrine constitutes a narrow exception to the rule of complete diversity") (citing *McDonal v. Abbott Labs.*, 408 F.3d 177, 183 (5th Cir. 2005)). The burden to establish improper joinder is on the removing party, and it "is a heavy one." *Id.* The removing party must establish either "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc) (quoting *Travis v. Irby*, 326 F.3d 644, 646–47 (5th Cir. 2003)). In this case, Hartford does not assert that Plaintiffs engaged in fraud. Thus, in order to establish improper joinder, Hartford must demonstrate that Connecticut Council has no possibility of recovery.[2] *Smallwood*, 385 F.3d at 573.

"There are two 'proper means for predicting whether a plaintiff has a reasonable basis of recovery under state law.'" *Prime Income Asset Mgmt. Co. v. Waters Edge Living LLC*, 2007 WL 2229050, at *2 (N.D. Tex. Aug. 3, 2007) (quoting *Smallwood*, 385 F.3d at 573). One way is to conduct a "Rule 12(b)(6)-type analysis," looking to the face of the complaint to assess whether it states a claim against the non-diverse defendant. *Smallwood*, 385 F.3d at 573. "Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder." *Id.*

The other way is to "pierce the pleadings" and conduct a Rule 56-type analysis. *Id.* This approach, however, is appropriate only where the plaintiff has withheld facts relevant to the propriety of joinder. *Id.* "The decision to conduct such an inquiry rests within the discretion of the trial court

---

[2] The parties do not dispute that the misjoinder doctrine applies to the improper joinder of plaintiffs as well as defendants. *See* Doc. 9, Defs.' Resp., 8 n.5 (citing *Miller v. Home Depot, U.S.A., Inc.*, 199 F. Supp. 2d 502, 508 (W.D. La. 2001) ("The fraudulent joinder doctrine can be applied to the alleged fraudulent joinder of a plaintiff.")).

and 'is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant.'" *Miller v. Giesecke & Devrient Am., Inc.*, 2007 WL 518557, at *3 (N.D. Tex. Feb. 20, 2007) (Fitzwater, J.) (quoting *Smallwood*, 385 F.3d at 573–74). Further, the "motive or purpose of the joinder" is not relevant to this inquiry. *Smallwood*, 385 F.3d at 574.

## III.

## ANALYSIS

The Court finds that the Rule 56-type analysis is appropriate here, because the parties had the opportunity to conduct some discovery before the case was removed and because they do not request additional discovery. *Cf. Smallwood*, 385 F.3d at 574 (noting that permitting discovery in the Rule 56-type analysis "carries a heavy risk of moving the court beyond jurisdiction and into a resolution of the merits"). Further, both parties primarily rely on this discovery and evidence outside the pleadings in support of their arguments for and against remand. Finally, a Rule 56-type inquiry is appropriate because Hartford has identified specific facts that it believes affect the propriety of joinder and that Plaintiffs have purportedly omitted from their complaint.

Considering the available facts, however, the Court finds that Hartford has failed to meet its heavy burden of showing that Connecticut Council has no reasonable basis to recover against Hartford on its declaratory judgment claim. Thus, Connecticut Council is not improperly joined. But for the reasons explained below, the Court **DENIES** Plaintiffs' motion to remand **WITHOUT PREJUDICE**.

A. *Under the Rule 56-Type Analysis, Hartford Cannot Show That Connecticut Council Is Precluded from Recovering*

The dispositive issue is whether Connecticut Council has a justiciable declaratory judgment claim against Hartford. Under this summary inquiry, Hartford must show that there is evidence that precludes Connecticut Council from recovering against it; it is not sufficient for Hartford to show an absence of evidence supporting Connecticut Council's claims. *See Davidson v. Georgia-Pacific, LLC*, 819 F.3d 758, 768 (5th Cir. 2016).

As discussed above, Connecticut Council seeks a declaration that, amongst other things: (1) each of the Hartford policies are in full force and effect; and (2) Hartford is obligated to pay and/or reimburse Connecticut Council for any ongoing defense costs incurred in defending against the sexual-abuse lawsuits. Doc. 1-2, Original Pet., ¶¶ 33–39. Plaintiffs allege that these issues create a justiciable controversy between Connecticut Council and Hartford regarding the rights and obligations under the Hartford policies. *Id.* ¶ 40.

The Court looks to Texas law to determine whether there is a reasonable basis for Connecticut Council to recover against Hartford.[3] "The TDJA affords Texas courts the 'power to declare rights, status, and other legal relations whether or not further relief is or could be claimed.'"

---

[3] Hartford argues that federal law applies to this analysis. *See* Doc. 9, Defs.' Resp., 10. The Court disagrees. To be sure, the Court acknowledges the general rule that "when a party seeks relief pursuant to the TDJA and the case is removed to federal court, the right to relief is converted to one under the [Federal Declaratory Judgment Act]." *Hellas Constr., Inc. v. Beynon Sports Surfaces, Inc.*, 2019 WL 4254307, at *3 (W.D. Tex. Sept. 6, 2019) (citing *Edionwe v. Bailey*, 860 F.3d 287, 294 n.2 (5th Cir. 2017)). But "where the question is improper joinder, the Court asks whether there is a reasonable basis for predicting that *state law* might impose liability against any non-diverse defendants." *Marsh v. Wells Fargo Bank, N.A.*, 760 F. Supp. 2d 701, 709 n.4 (N.D. Tex. 2011) (citation omitted). Thus, the Court analyzes Connecticut Council's claim under the TDJA and Texas law. *Ondova Ltd. v. Manila Indus., Inc.*, 513 F. Supp. 2d 762, 775 n.12 (N.D. Tex. 2007). Regardless though, "[b]oth Texas and federal law require the existence of a justiciable case or controversy in order to grant declaratory relief," *Val-Com Acquisitions Tr. v. CitiMortgage, Inc.*, 421 F. App'x 398, 400 (5th Cir. 2011), so the Court's analysis under either would be similar.

*Prime Income Asset Mgmt.*, 2007 WL 2229050, at *5 (quoting Tex. Civ. Prac. & Rem. Code § 37.003). "The stated purpose of the TDJA 'is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and it is to be liberally construed and administered." *Id.* (quoting Tex. Civ. Prac. & Rem. Code § 37.002(b)). Even though construed liberally, Texas courts nonetheless "limit [the TDJA's] application to cases in which there is an actual case or controversy between the parties." *Id.* (citing *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995)). "Texas courts do not have the authority to render 'advisory opinions,' and therefore may not review 'hypothetical or contingent situations, or determine questions not currently essential to the decision of an actual controversy.'" *Id.* (internal citations omitted). "A person seeking a declaratory judgment need not have incurred actual injury; a declaratory judgment action will lie if the facts show the presence of 'ripening seeds of controversy.'" *Id.* (quoting *City of Waco v. Tex. Nat. Res. Conservation Comm'n*, 83 S.W.3d 169, 175 (Tex. App.—Austin 2002, reh'g denied)).

Connecticut Council seeks a declaration that Hartford has a duty to defend it in ongoing sexual-assault lawsuits. Texas courts have held that these types of declaratory claims—those involving a duty to defend—involve, "in most situations, a justiciable issue." *English v. BGP Int'l, Inc.*, 174 S.W.3d 366, 371 & n.4 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (collecting cases). "Texas follows the eight-corners rule to determine whether an insurer owes a duty to defend." *Am. Constr. Benefits Grp., LLC v. Zurich Am. Ins. Co.*, 2014 WL 144974, at *3 (N.D. Tex. Jan. 15, 2014) (citations omitted).

> Under the eight-corners rule, two documents determine an insurer's duty to defend—the insurance policy and the third-party plaintiff's pleadings in the underlying litigation. If the underlying pleadings allege facts that may fall within the scope of coverage, the insurer has a duty to defend; if the pleading only alleges facts excluded by the policy, there is no duty to defend.

*Id.* (quoting *ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832, 840 (5th Cir. 2012) (cleaned up)). "Moreover, the duty to defend does not rely on the truth or falsity of the underlying allegations; an insurer is obligated to defend the insured if the facts alleged in the petition, taken as true, potentially assert a claim for coverage under the insurance policy." *ACE Am. Ins.*, 699 F.3d at 840 (citation omitted).

The Court pauses to note that this applicable principle of Texas law potentially forecloses any need to conduct a Rule 56-type inquiry. Specifically, because the inquiry is limited to the eight-corners rule, "an insurer's duty to defend can be determined at the moment the petition is filed." *Id.* (citation omitted). And "[r]esort to evidence outside the four corners of [the insurace policy and the pleadings] is generally prohibited." *Id.* (citing *Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 253 (5th Cir. 2011)). "[T]he Texas Supreme Court has never recognized any exception to the strict eight corners rule." *Id.* (quotation marks omitted) (quoting *Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 597 (5th Cir. 2011)).[4] However, because the parties primarily rely on evidence outside the record in support of their arguments and because it does not appear the Court's conclusion would differ under either approach, the Court will pierce the pleadings.

Doing so, the Court finds that the "discrete and undisputed facts," see *Smallwood*, 385 F.3d at 573–74, on which Hartford relies do not preclude Connecticut Council's recovery against Hartford; in fact, the available facts support Connecticut Council's contention that it has a

---

[4] To be sure, some Texas courts have recognized exceptions to this general rule. *See, e.g., Weingarten Realty Mgmt. v. Liberty Mut. Fire Ins.*, 343 S.W.3d 859, 865 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). And the Fifth Circuit has formulated *Erie* guesses on exceptions the Texas Supreme Court might recognize. *See Star-Tex Res., LLC v. Granite State Ins. Co.*, 553 F. App'x 366, 371–72 (5th Cir. 2014) (per curiam) (discussing the Fifth Circuit's *Erie* guesses). Hartford does not argue that any of these exceptions should apply here.

reasonable basis for recovery.

First, the Court turns to the documents relevant to the eight-corners rule: the insurance policy and the third-party plaintiffs' (the John Does') pleadings. As discussed above, Connecticut Council's predecessor entities are listed as insureds on the relevant Hartford policies. Doc. 5-6, Pls.' App., 203; Doc. 5-7, Pls.' App., 370, 438; Doc. 5-8, Pls.' App., 511. Thus, it is not disputed that Connecticut Council is an insured under the policies. The Court next looks to the third-party plaintiff's pleadings—here, the complaint in the *John Does* lawsuit filed in Connecticut state court. *See* Doc. 5-4, Pls.' App., John Does Compl., 15–165. The plaintiffs allege that, among other things, Connecticut Council was negligent in screening, supervising, and retaining scout leaders, and that this negligence resulted in physical, mental, and sexual abuse. *See, e.g.*, *id.* at 76–78. The injuries alleged occurred between 1974 and 1976. Doc. 4, Pls.' Mot. to Remand, 5. And the relevant Hartford policies state that Hartford will provide for the defense of Connecticut Council against personal injury claims that span these years. *Id.* (citing Doc. 5-6, Pls.' App., 171; Doc. 5-8, Pls.' App., 500). Thus, looking to the eight corners of these two documents, it appears to the Court that Connecticut Council has a justiciable claim that Hartford is obligated to defend Connecticut Council in the *John Does* lawsuit. What's more, for purposes of the motion to remand, Hartford does not appear to dispute (1) that Connecticut Council is an insured or (2) that the underlying *John Does* lawsuit is within the scope of the policy.

Rather, Hartford responds that the evidence that has been produced so far shows that Connecticut Council's claim is "speculative and hypothetical," and therefore nonjusticiable. Doc. 9, Defs.' Resp., 10. Hartford primarily relies on one of Connecticut Council's interrogatory responses. *See id.* at 6. When asked to "state the amount of Defense Costs that Connecticut Council has paid

or has reimbursed BSA," the Council responded:

> At this time, Connecticut is not aware of BSA seeking payment or reimbursement from Connecticut for defense costs. However, Connecticut's investigation is ongoing. Therefore, subject to and without waiving any of the foregoing objections, Connecticut reserves the right to supplement this Interrogatory in the event that Connecticut locates relevant, responsive, and nonprivileged information sought by this Interrogatory.

Doc. 10-5, Defs.' App., 38.

Hartford argues that this interrogatory response shows that Connecticut Council has not incurred or paid any defense costs in relation to the *John Does* lawsuit, or any other sexual-abuse lawsuits. Doc. 9, Defs.' Resp., 6–7. Instead, Hartford asserts, Boy Scouts of America has assumed any legal representation costs and has not sought reimbursement from Connecticut Council. *Id.* at 11–12. Hartford argues that this response proves that Connecticut Council's declaratory judgment claim is "abstract or hypothetical"—Hartford insists that the Boy Scouts is the "real party in interest" here because it has paid all defense costs and that any costs Connecticut Council "may be required to pay" are future costs that have not yet been incurred. *Id.* at 10, 12. (citation and quotation marks omitted). Hartford thus concludes that Connecticut Council's claim is unripe and nonjusticiable, and urges the Court to ignore Connecticut Council's presence in the suit for diversity purposes. *Id.* at 14.

In reply, Connecticut Council argues that even if the Court considers the interrogatory response, Hartford has failed to show "*discrete* and *undisputed* facts that it would not otherwise be obligated to pay future defense costs and indemnity amounts but for its coverage position, or any facts that would preclude the Connecticut Council from recovering such amounts from Hartford in the Texas Action." Doc. 17, Pls.' Reply, 7 (citing *Miller*, 2007 WL 518557, at *3). Connecticut Council asserts that, even if it is assumed that Boy Scouts has paid the Council's defense costs,

Hartford has no support for its position that when "another party has paid past costs, an insured is not entitled to seek future costs from its insurer." *Id.* at 7–8. And Connecticut Council contends that its discovery response does not summarily negate its claim against Hartford. Rather, the Council argues that because the response notes that its "investigation is ongoing," it is far from undisputed that the Boy Scouts "will always pay the Connecticut Council's defense costs and will never seek reimbursement[.]" *Id.* at 8–9.

The Court is not convinced by Hartford's arguments. To start, Hartford does not address Texas state law, and specifically the eight-corners rule that applies to declaratory actions seeking clarification on the duty to defend. Moreover, Hartford cites no Texas authority, or authority applying Texas law, that holds that a third party paying an insured's defense costs nullifies the insurer's duty to defend.[5] In determining whether Connecticut Council is improperly joined, the Court must decide "whether there is a reasonable basis for predicting that *state law* might impose liability against any non-diverse defendants." *Marsh*, 760 F. Supp. 2d at 709 n.4 (emphasis in original) (applying TDJA in improper joinder context); *see also Miller*, 2007 WL 518557, at *3–4 (same). And Texas law is clear that a justiciable claim on whether an insurer has a duty to defend is present when "the underlying pleadings allege facts that may fall within the scope of coverage[.]" *ACE Am Ins.*, 699 F.3d at 840. Hartford does not argue, for purposes of the motion to remand, that Plaintiffs have omitted discrete facts that show that the *John Does* lawsuit is not within the scope of

---

[5] Hartford does cite to *Heritage Bank v. Redcom Laboratories, Inc.*, 250 F.3d 319, 322–24 (5th Cir. 2001). *See* Doc. 9, Defs.' Mot., 16–17. However, that case does not address a declaratory judgment claim on whether an insurer has a duty to defend. The facts in *Heritage Bank* are not analogous to those presented here. Thus, while the general propositions of Texas law with respect to declaratory judgments are relevant here, see *Heritage Bank*, 250 F.3d at 324 (noting that a "justiciable controversy" must exist and that the controversy cannot be "contigent or hypothetical") (citations and quotation marks omitted), Hartford overstates *Heritage Bank*'s applicability to this set of facts.

the relevant Hartford policies. *See Smallwood*, 385 F.3d at 573–74.

The only evidence Hartford points to in support of its justiciability argument is Connecticut Council's discovery response. But, even if this response is considered relevant under Texas law, the Court is unable to conclude that it is a "discrete and undisputed" fact that would preclude Connecticut Council from recovering. *Id.* While Hartford argues this response shows that the "only defense costs that Connecticut Council may be required to pay . . . are *future* costs that are not yet incurred," Doc. 9, Defs.' Resp., 12, Connecticut Council has submitted evidence to the contrary. *See* Doc. 5-3, Pls.' App., Flowers Aff., ¶ 11 ("The John Does Lawsuit is currently pending and, as such, Connecticut Council continues to incur defense costs."); *see also* Doc. 5-1, Pls.' App., McDermott Aff., ¶ 11 (same). So the available evidence indicates that it is contested whether Connecticut Council is currently responsible for costs incurred in defending the *John Does* lawsuits. And the Fifth Circuit has warned that "the inability to make the requisite decision in a summary manner itself points to an inability of the removing party to carry its burden." *Smallwood*, 385 F.3d at 574.

To sum up, the fact that the Boy Scouts might currently be paying Connecticut Council's litigation costs does not foreclose the Council's claim because: (1) Connecticut Council is insured under the Hartford policies; (2) it is defending itself in ongoing litigation that it believes is covered under the policies; (3) Hartford has received notice of this suit[6]; and (4) Hartford has denied coverage. Under Texas law, courts find such facts sufficient to conclude a declaratory judgment claim on the duty to defend is ripe. *See Transp. Ins. Co. v. WH Cleaners, Inc.*, 372 S.W.3d 223, 228 (Tex.

---

[6] Although Hartford complains that Boy Scouts of America, not Connecticut Council, provided it with notice of the *John Does* lawsuit, see Doc. 9, Defs.' Resp., 11–12, Hartford cites no authority that holds that *who* provides the notice to the insurer is relevant to a duty-to-defend claim.

App.—Dallas 2012, no pet.) ("In Texas, the determination of whether a carrier has the responsibility to defend its insured constitutes a justiciable controversy.") (collecting cases); *see also Everest Indem. Ins. Co. v. Allied Int'l Emergency LLC*, 2009 WL 2030421, at *4 (N.D. Tex. July 14, 2009) ("[A] justiciable controversy exists between the parties because Defendants, as Everest's insureds, have been sued and now seek to have Everest provide a defense in the Underlying Suit." (citing *Am. States Ins. Co. v. Bailey*, 133 F.3d 363, 368 (5th Cir. 1998))).

Thus, Hartford has not met its heavy burden of showing that Connecticut Council has no possibility of recovering on its declaratory judgment claim. *See Prime Income Asset Mgmt.*, 2007 WL 2229050, at *6. The Court therefore concludes that Connecticut Council was not improperly joined. Consequently, there is not complete diversity amongst the parties. However, as discussed in the next section, the Court will not remand this case because it appears the Court has "related to" jurisdiction under 28 U.S.C. § 1334.

B.   *For the Time Being, the Court Retains the Case Under 28 U.S.C. § 1334*

On February 21, 2020, the Court issued an order that permitted the parties to file an advisory motion if they believed Boy Scouts of America's Chapter 11 proceeding prevented this Court from ruling on the pending motion to remand. Doc. 20, Order, 1–2. On March 6, 2020, Hartford filed a response (Doc. 23). In its response, Hartford agreed with the Court that the automatic stay does not apply to Plaintiffs' claims in this action. Doc. 23, Defs.' Resp., 1. However, Hartford noted that it does believe that the bankruptcy proceeding is relevant to Plaintiffs' motion to remand; specifically, Hartford argues that the Court now has "related to" jurisdiction under 28 U.S.C. § 1334. *Id.* Hartford contends that this is an independent reason to deny Plaintiffs' request to remand this case to state court.

"Federal courts have 'related to' subject matter jurisdiction over litigation arising from a bankruptcy case if the 'proceeding could conceivably affect the estate being administered in bankruptcy.'" *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 386 (5th Cir. 2010) (quoting *In re TXNB Internal Case*, 483 F.3d 292, 298 (5th Cir. 2007) (citation omitted), *cert. denied*, 552 U.S. 1022 (2007)). "'Related to' jurisdiction includes any litigation where the 'outcome could alter, positively or negatively, the debtor's rights, liabilities, options, or freedom of action or could influence the administration of the bankrupt estate.'" *Id.*

Hartford argues the Court has "related to" jurisdiction "because the outcome of the Texas coverage action will undoubtedly have a substantial effect on [the Boy Scout]'s estate." Doc. 23, Defs.' Resp., 4. Thus, Hartford now asserts 28 U.S.C. § 1452(a) as a basis for removal. *Id.* at 6.

Although the Court concludes in this Order that it does not have diversity jurisdiction over this case, the Court believes there is a plausible claim that "related to" jurisdiction now exists under § 1334(b) and that removal is supported under § 1452(a). Consequently, the Court will **DENY** Plaintiffs' motion to remand. The Court does so, however, **WITHOUT PREJUDICE** to Plaintiffs refiling a second motion to remand based on: (1) the Court's "related to" jurisdiction (or lack thereof); or (2) any issues raised in the Defendants' Response to Inquiry Regarding Automatic Stay (Doc. 23).

If Plaintiffs do decide to bring such a motion, the Court advises the parties that it is particularly concerned with whether the following doctrines apply: equitable remand, discretionary abstention, or mandatory abstention. *See* 28 U.S.C. § 1452(b) (equitable remand); 28 U.S.C. § 1334(c)(1) (discretionary abstention); 28 U.S.C. § 1334(c)(2) (mandatory abstention). Additionally, the Court is currently inclined to believe that, regardless of the jurisdictional issues,

a venue transfer might be appropriate. *See LSREF2 Baron, LLC v. Aguilar*, 2013 WL 230381, at *1 (N.D. Tex. Jan. 18, 2013) (finding that *sua sponte* transfer of claims "related to" bankruptcy estate to the district where Chapter 11 case was pending was appropriate under both 28 U.S.C. §§ 1404(a) and 1412); *see also Marquette Transp. Co. v. Trinity Marine Prods., Inc.*, 2006 WL 2349461, at *1 (E.D. La. Aug. 11, 2006).

Finally, if Plaintiffs choose to file a second motion to remand on the Court's "related to" jurisdiction, Plaintiffs shall do so on or before **Tuesday, March 31, 2020**. Any responsive briefing to such motion shall be submitted as required by the local rules of this Court.

## IV.

## CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiffs' Motion to Remand (Doc. 4) **WITHOUT PREJUDICE** to refiling a second motion to remand based on the Court's "related to" jurisdiction (or lack thereof) or any issues raised in the Defendants' Response to Inquiry Regarding Automatic Stay (Doc. 23). If Plaintiffs choose to file a second motion to remand on any of these bases, Plaintiffs shall do so on or before **Tuesday, March 31, 2020**. Any responsive briefing to such motion shall be submitted as required by the local rules of this Court.

SO ORDERED.

SIGNED: March 10, 2020.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

-17-