UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BOY SCOUTS OF AMERICA, CONNECTICUT YANKEE COUNCIL, SPIRIT OF ADVENTURE COUNCIL, ALOHA COUNCIL, CASCADE PACIFIC COUNCIL <br><br> Plaintiffs, <br><br> v. <br><br> THE HARTFORD ACCIDENT AND INDEMNITY CO., FIRST STATE INSURANCE CO. <br><br> Defendants. | § § § § § § § § § § § § § § § § § | Civil Action No. 19-CV-1318 |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO TRANSFER VENUE
<u>TO THE U.S. DISTRICT COURT FOR THE DISTRICT OF DELAWARE</u>**

**TABLE OF CONTENTS**

INTRODUCTION ..........................................................................................................................1

BACKGROUND ............................................................................................................................2

ARGUMENT ..................................................................................................................................4

I.      THIS ACTION IS "RELATED TO" BSA'S CHAPTER 11 CASE IN THE DISTRICT OF DELAWARE ................................................................................................4

II.     THIS COURT SHOULD EXERCISE ITS AUTHORITY TO TRANSFER THIS CASE IN THE INTEREST OF JUSTICE AND BECAUSE IT IS THE MOST CONVENIENT FORUM ..................................................................................................5

      A.     Delaware Is The Most Convenient Forum ................................................................6

      B.     Transfer To Delaware Is In The Interest Of Justice ..................................................7

            1.     Efficient Administration of the Estate ............................................................8

            2.     There is a Strong Preference for the Forum of the Bankruptcy Case ..................................................................................................................9

            3.     Transfer Promotes Judicial Efficiency ...........................................................9

            4.     All Parties Can Receive a Fair Trial in Delaware ........................................10

            5.     No Compelling "Local Controversy" Counsels Against Transfer .............10

            6.     Any Judgment in Delaware is Equally Enforceable ..................................10

            7.     Plaintiff's Choice of Forum Does Not Make Transfer Inappropriate .................................................................................................11

CONCLUSION .............................................................................................................................11

# **TABLE OF AUTHORITIES**

**Federal Cases**

*Creekridge Capital, LLC v. Louisiana Hosp. Center, LLC*
  410 B.R. 623 (D. Minn. 2009) ........................................................................................7

*Domain Protection, LLC v. Sea Wasp, LLC*
  3:18-CV-01578-K, 2018 WL 5809298 (N.D. Tex. Nov. 6, 2018) ...........................7, 9, 11

*In re Bruno's Inc.*
  227 B.R. 311 (Bankr. N.D. Ala. 1998) ............................................................................7

*In re TXNB Internal Case*
  483 F.3d 292 (5th Cir. 2007) ..........................................................................................4

*Leal v. Bednar*
  3:16-CV-3424-G, 2017 WL 565176 (N.D. Tex. Feb. 13, 2017) ........................... 6-7, 9, 11

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*
  594 F.3d 383 (5th Cir. 2010) ..........................................................................................4

*LSREF2 Baron, LLC v. Aguilar*
  3:12-cv-1242-M, 2013 WL 230381 (N.D. Tex. Jan 18, 2013)............................... 6-7, 9,11

*Marquette Transp. Co. v. Trinity Marine Prods., Inc.*
  06-0826, 06-0827, 06-1281, 06-1282, 2006 WL 2349461 (E.D. La Aug. 11, 2006)..........6

**Other Authorities**

28 U.S.C. § 1412................................................................................................... 1-2, 5-6, 10

28 U.S.C. § 1334(b) ...........................................................................................................1, 4

Defendants Hartford Accident and Indemnity Company ("Hartford A&I") and First State Insurance Company ("First State") (collectively, "Hartford"), respectfully submit this memorandum of law in support of their motion to transfer venue, pursuant to 28 U.S.C. § 1412, to the U.S. District Court for the District of Delaware, where the Bankruptcy Court is administering plaintiff's bankruptcy case, *In re Boy Scouts of America and Delaware BSA, LLC*, Case No. 20-10343.  Transfer here will promote both the convenience of the parties and the interests of justice; the Court accordingly should grant Hartford's motion to transfer.

## INTRODUCTION

This is an insurance coverage action in which Plaintiffs -- the Boy Scouts of America ("BSA") and four of its local councils -- seek insurance coverage from Hartford for underlying claims alleging bodily injury from sexual abuse ("Abuse Claims").  BSA initially filed this case as a standalone litigation, but on February 18, 2020, BSA filed a bankruptcy petition in the United States Bankruptcy Court for the District of Delaware.  In conjunction with its first-day filings, BSA acknowledged that a global resolution of Abuse Claims was a primary rationale for the bankruptcy filing.  To that end, BSA's bankruptcy case will be focused largely on resolving and funding the Abuse Claims, including those that are at issue here.

On March 10, 2020, this Court denied Plaintiffs' Motion to Remand without prejudice and further stated that "a venue transfer might be appropriate."  Memorandum Opinion and Order at 17 (Mar. 10, 2020) [ECF No. 26] ("March 10 Order").  Hartford agrees that transfer to the District of Delaware, pursuant to 28 U.S.C. § 1412, is appropriate under these circumstances. This Court has "related to" jurisdiction under Section 1334(b) and therefore can transfer this action under Section 1412 to the District of Delaware -- the District where BSA's bankruptcy case is pending.  Not only is such a transfer convenient -- the parties are already litigating there

-- it is also the most economical and efficient path for the administration of the bankruptcy and the insurance coverage disputes. Accordingly, this Court should exercise its authority to transfer under Section 1412.

## BACKGROUND

Hartford issued a number of primary, umbrella and/or excess policies to BSA for certain periods from September 21, 1971 to January 1, 1978. Hartford issued all these policies to BSA in North Brunswick, New Jersey, where BSA was headquartered. *See, e.g.*, Ex. 1-A (App.005) (Hartford policy). After the policy period of the last Hartford policy at issue in this action expired, BSA moved its headquarters to Irving, Texas.

Numerous Abuse Claims across the country name BSA as a defendant. Hartford has participated in the defense and settlement of a number of these Abuse Claims. Hartford and BSA, however, fundamentally disagree over the extent of Hartford's obligation to provide primary and excess coverage for such lawsuits. On June 5, 2018, BSA filed this action against Hartford in the District Court of Dallas County, Texas raising several of these disagreements including: (i) whether Hartford has a duty to defend certain of the Abuse Claims; (ii) whether the underlying Abuse Claims arise from a single occurrence; (iii) whether aggregate limits apply to the Abuse Claims; (iv) what limits apply to certain policies issued for more than a single year; (v) whether Hartford issued a number of alleged, but unconfirmed, policies that BSA contends provide coverage for Abuse Claims; and (vi) whether BSA can meet its burden to show that the alleged injuries in the Abuse Claims are neither expected nor intended. *See* Plaintiffs' Original Petition [ECF No. 1-2] ("Petition"). BSA has provided Hartford with a list of 201 Abuse Claims for which it is seeking coverage here; only five involve claims filed in Texas state courts.

BSA filed its bankruptcy petition on February 18, 2020. BSA's stated objectives in filing bankruptcy are twofold: "(a) timely and equitably compensating victims of abuse in Scouting and (b) ensuring that BSA emerges from bankruptcy with the ability to continue it vital charitable mission." *See* Ex. 1-B (App.018-App.019) (Debtor's Informational Brief). To achieve these objectives, BSA intends to pursue a plan of reorganization that resolves all Abuse Claims. BSA's initial filings make clear that it intends to establish a victims' compensation trust and, as part of a plan, seek to impose a Channeling Injunction that would channel all Abuse Claims to the trust. *See id.* (App.056).

BSA also has made no secret that it expects its liability insurance to play an important role in funding that trust. *See, e.g.*, *id.* (App.047) ("These policies date back to 1962 and over time came to include both primary and excess insurance coverage that provide substantial limits of liability in many years. . . . at least some level of coverage under the CGL policies is available for bodily injury claims, including claims arising out of abuse and sexual misconduct.").

In its first-day filings, BSA asked the bankruptcy court to immediately appoint a mediator and refer to mandatory mediation "all issues related to a global settlement of abuse claims through a consensual plan of reorganization." *Id.* (App.021). According to BSA, "it is critical for a mediator to be appointed at the outset of these cases given the need to avoid a prolonged chapter 11 process for [BSA] and the complexity of the issues at hand." *Id.* The issues BSA asks the bankruptcy court to refer are the "nature of abuse claims, the enforceability of restrictions on BSA's and Local Council's assets, and the *BSA's historical insurance coverage*." *Id.* (emphasis added). Indeed, the outcome of its disputes with its insurers, including Hartford, are critical to the ultimate resolution of its bankruptcy case:

> "The complexity and sheer number of issues that must be resolved in connection with a global resolution of abuse claims under a plan

> of reorganization cannot be understated.  These myriad issues include. . . coverage disputes between BSA and its insurers."

Ex. 1-C (App.071) (Debtors' Motion for Mediator ¶ 17).  Consequently, BSA's motion seeking an order for mediation unequivocally identifies funding and insurance as two of the critical issues that "any Mediator will be focused on" and that need to be resolved:  "the funding of a victims compensation trust," and "issues pertaining to shared insurance between the BSA and local councils; and coverage disputes between the BSA and its insurers."  *Id*.  The issues in this action, therefore, are not merely "related to" the bankruptcy case; they are critical to BSA's own chartered course towards resolution in the bankruptcy case.  Given the connection of the coverage issues in this dispute to BSA's overall approach in its bankruptcy proceeding, this action should be transferred to the same district court for comprehensive and consistent resolution in a single forum.

## ARGUMENT

### I.  THIS ACTION IS "RELATED TO" BSA'S CHAPTER 11 CASE IN THE DISTRICT OF DELAWARE.

District courts have original jurisdiction "of all civil proceedings arising under title 11, or arising in or related to cases under title 11."  28 U.S.C. § 1334(b).  While the Court did not decide whether it has "related to" jurisdiction over this action in the Memorandum Opinion and Order entered on March 10, 2020, it did note that "there is a plausible claim that 'related to' jurisdiction now exists under §1334(b) and that removal is supported under § 1452(a)."  March 10 Order at 16.  As the Court recognized:

> "Federal courts have 'related to' subject matter jurisdiction over litigation arising from a bankruptcy case if the 'proceeding could conceivably affect the estate being administered in bankruptcy.'"  *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 386 (5th Cir. 2010) (quoting *In re TXNB Internal Case*, 483 F.3d 292, 298 (5th Cir. 2007) (citation omitted), *cert. denied*,

> 552 U.S. 1022 (2007)). "'Related to' jurisdiction includes any litigation where the 'outcome could alter positively or negatively, the debtor's rights, liabilities, options, or freedom of action or could influence the administration of the bankrupt estate.'" *Id.*

March 10 Order at 16.

This case easily clears that standard; there is not just a "conceivable" effect on the bankruptcy case, but a direct and palpable effect. The parties' coverage disputes -- number of occurrences, available limits and whether claims were expected or intended -- will be integral to the amount of insurance coverage available under the Hartford policies to pay for Abuse Claims. Where, as here, funding a trust to pay pending and future Abuse Claims is a central feature of BSA's reorganization plans, the means and amount of funding available from Hartford is more than a tangential issue. That is not lost on BSA. BSA's first-day filings recognize that the coverage disputes will have a direct impact on its rights and options in its Chapter 11 proceeding, which is precisely why BSA has asked that coverage issues be directed to mediation at the start of its bankruptcy case. Its own representations to the bankruptcy court confirm that BSA understands the coverage disputes at issue in this action satisfy the "related to" jurisdictional standard.

## II. THIS COURT SHOULD EXERCISE ITS AUTHORITY TO TRANSFER THIS CASE IN THE INTEREST OF JUSTICE AND BECAUSE IT IS THE MOST CONVENIENT FORUM.

Because this Court has "related to" bankruptcy jurisdiction, this Court also has the authority to transfer this adversary proceeding to the District of Delaware, BSA's chosen bankruptcy court, pursuant to 28 U.S.C. § 1412. Under Section 1412, "a district court may

transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties."[1]

### A. Delaware Is The Most Convenient Forum.

Here, the most convenient forum to litigate the parties' coverage disputes is Delaware. BSA chose to file its bankruptcy case there, which dispels any notion that it is not convenient. Because bankruptcy proceedings there are ongoing, the parties and their counsel likely will already be in Delaware on a regular basis for hearings and other activities connected to the bankruptcy case. Further, BSA is the only plaintiff that is resident in Texas. The other four plaintiffs are residents of other states. Connecticut Yankee Council is a Connecticut non-profit corporation that is headquartered in Connecticut; Aloha Council is a Hawaii non-profit corporation that is headquartered in Hawaii; Spirit of Adventure Council is a Massachusetts non-profit corporation that is headquartered in Massachusetts; and Cascade Pacific Council is an Oregon non-profit corporation that is headquartered in Oregon. *See* Petition ¶¶ 3-6. The local councils, while not debtors, have a substantial interest in the bankruptcy proceedings, and BSA has been clear that it intends for the bankruptcy case to resolve the abuse claims against them as well. None of them, in contrast, has any significant interest in proceeding in Texas.

---

[1] Courts in this Circuit have routinely recognized that Section 1412 applies to "related to" bankruptcy actions. *See, e.g.*, *Leal v. Bednar*, 3:16-CV-3424-G, 2017 WL 565176, at *3 (N.D. Tex. Feb. 13, 2017) (finding that "section 1412 is the statute governing transfer of claims related to title 11 actions"); *LSREF2 Baron, LLC v. Aguilar*, 3:12-cv-1242-M, 2013 WL 230381 at *4 (N.D. Tex. Jan 18, 2013) (holding that "28 U.S.C. § 1412 grants a district court the discretion to transfer a civil case to the district in which the bankruptcy proceeding is pending"); *Marquette Transp. Co. v. Trinity Marine Prods., Inc.*, 06-0826, 06-0827, 06-1281, 06-1282, 2006 WL 2349461, at *4 (E.D. La Aug. 11, 2006) (finding that section 1412 applies to "related to" proceedings). Even if that were not the case, however, transfer would still be appropriate here because transfer under Section 1404(a) would require evaluation of many of the same considerations regarding convenience of the parties and interests of justice, leading to the same result.

### B.     Transfer To Delaware Is In The Interest Of Justice.

Considerations of convenience aside, Delaware is clearly the forum most suited to promote the efficient administration of justice here.  Because the prongs "interest of justice" or the "convenience of the parties" are written in the disjunctive, a "district court may transfer a case under § 1412 without considering the convenience of the parties." *LSREF2 Baron, LLC,* 2013 WL 230381, at *4.  That consideration points strongly towards transfer to the bankruptcy forum, particularly as a forum that the debtor itself (BSA) has chosen:  "As to the interest of justice prong, there is a 'strong presumption that proceedings related to a bankruptcy case should be transferred to the district court where the bankruptcy proceedings are pending.'" *Leal*, 2017 WL 565176, at *4 (*quoting LSREF2 Baron, LLC,* 2013 WL 230381, at *5).

In determining whether a transfer under Section 1412 is in the interests of justice, courts consider the following factors:  "(1) the economical and efficient administration of the bankruptcy estate, (2) the presumption in favor of the forum where the bankruptcy case is pending, (3) judicial efficiency, (4) the ability to receive a fair trial, (5) the state's interest in having local controversies decided within its borders, (6) the enforceability of any judgment rendered, and (7) the plaintiff's original choice of forum." *LSREF2 Baron, LLC,* 2013 WL 230381, at *4 (citing *Creekridge Capital, LLC v. Louisiana Hosp. Ctr., LLC,* 410 B.R. 623, 629 (D. Minn. 2009)).  "In evaluating the interest of justice factors, several courts have found the most important factor is whether the transfer would promote the economic and efficient administration of the bankruptcy estate." *Id.* (citing *In re Bruno's Inc.,* 227 B.R. 311, 321-23 (Bankr. N.D. Ala. 1998))*; see also Domain Protection, LLC v. Sea Wasp, LLC*, 3:18-CV-01578-K, 2018 WL 5809298, at *5 (N.D. Tex. Nov. 6, 2018); *Leal*, 2017 WL 565176, at *4.  Most

important for purposes of this case, while several of these factors weigh strongly in favor of transfer, *none* of those factors weigh against it.

      1. <u>Efficient Administration Of The Estate</u>.  Here, the interests of economy and efficiency weigh in favor of resolving these issues in a single forum.  BSA has already made substantial efforts to make Delaware the hub for the underlying sexual abuse claims.  BSA has removed claims filed in state court to federal court on the basis of "related to" bankruptcy jurisdiction, and and has filed a motion in Delaware seeking transfer of all such cases to the Delaware court.  *See* Ex. 1.D (App.081, App.085-86) (BSA Notice of Removal asserting "related to" jurisdiction under Section 1332(b) over Abuse Claim ¶¶ 10-11); *see* Ex. 1.E (App.099) (BSA Opening Brief in Support of the Debtors' Motion to Fix Venue for Claims Related to Bankruptcy under 28 U.S.C. §§ 157(b)(5) and 1334(b) seeking to transfer venue "to centralize the administration of the Debtors' bankruptcy estates").  There is no reason not to seek similar efficiencies here.  Once this case is transferred to Delaware, these proceedings can be administered by the same court that is handling BSA's bankruptcy case, allowing a single court -- the Delaware bankruptcy court -- to move forward with the most complete picture of issues that affect the bankruptcy estate.

    That efficiency has great value in the administration of justice here, where coverage issues are critical, not tangential, to the manner in which the bankruptcy case will move forward.  The coverage disputes at issue here will determine the amount that BSA can expect to receive from one of its most significant potential funding sources for the trust that will be established to resolve Abuse Claims.  Recognizing this, BSA has already stepped in and asked the Delaware Court to take a role in managing these issues by seeking a comprehensive mediation in Delaware that expressly includes "applicable insurers under one or more insurance policies that afford the Debtors rights, benefits, indemnity or insurance coverage with respect to abuse claims."  Ex. 1.C

(App.078) (Debtors' Mediation Motion, Proposed Order ¶ 3).  To the extent that litigation does go forward on the coverage issues, allowing it to go forward in Delaware, where other issues concerning BSA's estate will be resolved, will also ensure that issues are addressed in concert with one another and that the risk of inconsistent rulings is minimized, if not eliminated.  Because the coverage issues are so impactful to the bankruptcy, and will necessarily arise in that context, it is neither economical nor efficient for the bankruptcy estate for this action to proceed here, while the bankruptcy proceeds in Delaware.

    2.  <u>There Is A Strong Preference For The Forum Of The Bankruptcy Case</u>.  BSA elected to file its bankruptcy in the District of Delaware, rather than here.  There is a strong presumption that this action, which is closely related to the bankruptcy, should be transferred to that district.  *See Domain Protection, LLC*, 2018 WL 5809298, at *5; *Leal*, 2017 WL 565176, at *4, *LSREF2 Baron, LLC,* 2013 WL 230381, at *5.  Indeed, this factor may be dispositive particularly where, as here, the action both involves the debtor and issues that are important to the reorganization.  Here, this action has both qualities.

    3.  <u>Transfer Promotes Judicial Efficiency</u>.  The third factor also weighs in favor of transfer.  Insurance coverage issues will permeate the mediation that BSA is seeking, and they are likely to be an important element of the plan and related bankruptcy matters.  The parties have disagreements regarding the role of insurance in the plan and they have discovery disputes concerning the nature and extent of information regarding insurance and the Abuse Claims that, in the absence of a transfer, will be sought in both this litigation and the bankruptcy mediation.  It makes little sense to have potentially two courts wrestle with these issues when they can be consolidated in a single court that has ultimate responsibility for BSA's reorganization.

4. <u>All Parties Can Receive A Fair Trial In Delaware</u>.  With respect to the fourth factor, there is no reason to believe that BSA will not receive a fair trial in the District of Delaware, as that court can adequately protect all parties' rights.  BSA cannot contend differently, particularly when it chose to file its bankruptcy case there.

5. <u>No Compelling "Local Controversy" Counsels Against Transfer</u>.  Fifth, no strong "local" interest requires that this case be maintained in Texas.  As BSA notes throughout its bankruptcy petition and first-day filings, the Abuse Claims are a national, if not international, issue and involve defendants – the local councils – from all over the country; while the 201 underlying cases at issue in this action were brought in numerous jurisdictions across the country, less than a handful of the underlying cases were brought in a Texas court.  The only connection to Texas is that BSA is currently headquartered Irving, Texas; indeed, most of the plaintiffs in this case – four of the local councils – are not Texas entities at all.  The Abuse Claims are decided under the tort law of various jurisdictions across the country.  And the insurance policies at issue here were delivered to BSA at its then-headquarters in New Jersey, not Texas.  Accordingly, Texas has no compelling interest in applying its own law.  Under these circumstances, where the dispute is truly national in character, this factor also confirms that transfer is appropriate.

6. <u>Any Judgment In Delaware Is Equally Enforceable</u>.  The sixth factor in the transfer analysis looks to whether a party opposing transfer would have difficulty in recovering a judgment rendered in the potential alternative forum.  Here, any judgment against Hartford will be just as enforceable as one entered by this Court.  Accordingly, transfer is fully consistent with consideration of this factor.

7. <u>Plaintiff's Choice of Forum Does Not Make Transfer Inappropriate</u>.  Finally, that BSA brought suit in Texas has little weight in this instance as it made that choice before it subsequently chose to file for bankruptcy protection in Delaware.  Moreover, in this context, Plaintiff's choice is far from dispositive.  To treat it otherwise would eliminate the possibility of transfer under Section 1412 entirely.  This is especially true since there is a presumption in favor of transfer to the district where the debtor's bankruptcy is proceeding.  *See e.g., Domain Protection, LLC*, 2018 WL 5809298, at *5; *Leal*, 2017 WL 565176, at *4, *LSREF2 Baron, LLC,* 2013 WL 230381, at *5.  Moreover, BSA certainly could have filed its bankruptcy petition in Texas.  Instead, it chose to file in Delaware.  BSA is represented by experienced counsel.  If proceeding in Delaware presented any hardship or unfairness to BSA, then it would not have chosen to file its Chapter 11 case there.

Because the interest of justice factors weigh in favor of transfer, this Court should exercise it authority under Section 1412 and transfer this case to the District of Delaware.

## CONCLUSION

For the foregoing reasons, Hartford respectfully requests that this Court transfer venue, pursuant to 28 U.S.C. § 1412, to the U.S. District Court for the District of Delaware.

Dated:  March 26, 2020                                             Respectfully submitted,


                  /s/ Todd M. Tippett
                  Todd M. Tippett
                  Texas Bar No. 24046977
                  ttippett@zelle.com
                  ZELLE LLP
                  901 Main Street, Suite 4000
                  Dallas, Texas 75202-3975
                  Telephone:  214-742-3000
                  Facsimile:  214-760-8994

                  James P. Ruggeri (admitted *pro hac vice*)
                  jruggeri@shipman.com
                  Joshua D. Weinberg (admitted *pro hac vice*)
                  jweinberg@shipman.com
                  Abigail W. Williams (admitted *pro hac vice*)
                  awilliams@shipman.com
                  SHIPMAN & GOODWIN LLP
                  1875 K Street NW
                  Washington, D.C. 20006-1251
                  Telephone:  202-469-7750
                  Facsimile:  202-469-7751

                  ATTORNEYS FOR DEFENDANTS
                  HARTFORD ACCIDENT AND
                  INDEMNITY CO., FIRST STATE
                  INSURANCE CO.

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the Memorandum of Law in Support of Defendants' Motion to Transfer Venue to the U.S. District Court for the District of Delaware has been served this 26th day of March, by electronic filing as follows:

> Ernest Martin, Jr.
> State Bar No. 13063300
> ernestmartin@haynesboone.com
> Carla Green
> State Bar No. 24097762
> Carlagreen@haynesboone.com
> **HAYNES AND BOONE, L.L.P.**
> 2323 Victory Ave., Suite 700
> Dallas, Texas 75219
> Telephone:  (214) 651-5000
> Telecopier:  (214) 651-5940
> **ATTORNEYS FOR PLAINTIFFS**

__/s/ Todd M. Tippett_____<br>Todd M. Tippett